UNITED STATES of America, Appellant,

v.

**Ardell LEE et al., Appellees.**

**No. 21706.**

United States Court of Appeals
Ninth Circuit.

Aug. 30, 1968.

Certiorari Denied Jan. 20, 1969.

See 89 S.Ct. 691.

---

Edwin L. Weisley, Jr., Asst. Atty. Gen., Morton Hollander, Leonard Schaitman, Washington, D. C., Wm. M. Byrne, Jr., U. S. Atty., Los Angeles, Cal., for appellant.

Lee S. Kreindler (argued) of Kreindler & Kreindler, New York City, Samuel M. Hecsh, San Diego, Cal., for appellees.

Before HAMLEY and CARTER, Circuit Judges, and SMITH, District Judge.*

JAMES M. CARTER, Circuit Judge:

This is a Tort Claim case, where the personal representatives and dependents of two service men brought suit against the government, due to the death of the service men in a crash of a military aircraft. The government moved to dismiss the complaint on the basis of Feres v. United States, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950). The motion was denied; the trial court filed an opinion, Ardell Lee, etc. et al. v. United States, 261 F.Supp. 252. (Cen.Dist. of Calif.1966). The district court denied a timely motion for reconsideration, but

certified that its denial involved a controlling question of law, and that an immediate appeal would materially advance the termination of the litigation. On March 23, 1967, this court, pursuant to 28 U.S.C. § 1292(b) and this court's Rule 38, granted the government's application for leave to take an interlocutory appeal.

### The Question Presented

The sole question presented is whether Feres v. United States, supra, and its ultimate holding that servicemen on active duty, are not within the Act, is still good law, requiring the dismissal of the action for lack of jurisdiction and failure to state a claim, or whether, as the district court held, that decision has been so eroded by subsequent decisions of the Supreme Court, that it is no longer the controlling law.

### The Complaint

The complaint is in two causes, one for each of the service men whose deaths are involved, and the same allegations hereafter referred to are common to each cause of action. The first cause alleges that on June 25, 1965, Sgt. James E. Lee, deceased, was on active duty in the Marine Corps; that he was a passenger aboard a transport being operated by Military Air Transport Service, United States Air Force; that the aircraft crashed in the vicinity of Santa Ana, California; that the United States, through its Federal Aviation Agency, a division of the government, separate and apart from either the United States Marine Corps in which the decedent was serving, or from the United States Air Force which was operating the aircraft, owned, operated and controlled certain radar and electronic and radio facilities used by the United States to control, advise, direct and inform aircraft operating from the Marine Corps Air Station at El Toro, Santa Ana, California,[1] that

---

* Hon. Russell E. Smith, United States District Judge, District of Montana, sitting by designation.

1. The complaint does not indicate whether the plane crashed to earth *on or off* the base, stating only "said aircraft crashed in vicinity of Santa Ana, California."

the United States, through its Federal Aviation Agency developed and approved Standard Instrument Departures (S.I. Ds.) and other navigational data which were used by aircraft departing the Marine Corps station; that prior to and at the time of the crash, the aircraft of the United States Air Force, in which Lee was a passenger, was departing the Marine Corps station at El Toro, Santa Ana, California, while receiving control, advice and direction from the defendant United States of America's Federal Aviation Agency employees acting in the scope of their employment, "and in accordance with the Standard Instrument Departure and other navigational data which had been prepared and approved by the defendant's Federal Aviation Agencies employees * * *; that the crash was caused by the negligence of defendant United States of America's Federal Aviation Agency in carelessly operating, maintaining and controlling the departure of the said aircraft from the Marine Corps Air Station * * * and in carelessly controlling, advising, directing and informing the aircraft of dangerous terrain in the vicinity of the airport, in providing a departure procedure which incorporated inadequate terrain clearance information, and in other aspects." Other allegations as to jurisdiction, death, the capacity of plaintiffs, and damages have been omitted.

### The Motion to Dismiss

The government's motion to dismiss, under Rule 12(b) F.R.Civ.P., asserted lack of jurisdiction over the subject matter of the action, and that the complaint failed to state a claim upon which relief could be granted. The motion was supported by a memorandum based on Feres v. United States, supra, and subsequent circuit court cases following its holding.

### The Posture of the Case

At the argument on the appeal, government counsel would not concede that the case presented the issue of the United States as a defendant, solely because of the activities of a civilian agency, the Federal Aviation Agency. Because of the nature of the complaint, the government was not in a position to put the case in this posture. At argument the government called attention to the fact the crash was that of a military transport operated by the Air Force personnel on the Marine Corps base, or after taking off from a Marine Corps base, and that the employees of the Federal Aviation Agency were undoubtedly stationed on the base; that the proof would probably show that the Marine Commandant of the base was in overall charge of all activities, civilian or otherwise, on the Marine Corps base.

### The Supreme Court Decisions

The problem of claims of dependents of servicemen under the Tort Claims Act, has been before the Supreme Court on three occasions. In Brooks v. United States, 337 U.S. 49, 69 S.Ct. 918, 93 L. Ed. 1200 (1949) the court considered claims arising from death and personal injury sustained by two servicemen on *furlough* resulting from the collision of the vehicle in which they were riding with an Army truck. Recovery was allowed.

Feres v. United States, supra, involved three cases. In one a soldier (Feres), on *duty* quartered in unsafe barracks with a defective heating plant, died in a fire. In the second a soldier (Jefferson), on *duty* underwent an abdominal operation. Eight months later, during a subsequent operation after his discharge from the service, a towel was discovered and removed from his stomach. It was found to have been left through negligence by an army surgeon. In the third case, a soldier (Griggs), while on *duty*, met death because of negligence and unskillful treatment by army surgeons. In each case it was held no recovery could be had on the claims.

United States v. Brown, 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed. 139, was decided by the court in 1954. There a veteran, *after discharge* from the service, was negligently treated in a Veterans Administration hospital for an injury oc-

curring while in service. The Supreme Court upheld the claim under the Tort Claims Act.

### Congress has not Amended the Act

Congress has not seen fit to amend the Tort Claims Act. In *Feres*, the Supreme Court said "If we misinterpret the Act * * * Congress possesses a ready remedy." (340 U.S. at 138, 71 S.Ct. at 155). Despite this statement in 1950, Congress has acquiesced in the holding of *Feres*, permitting the decision to remain undisturbed for eighteen years. The Supreme Court has twice stated:

> " '[W]hen the questions are of statutory construction, not of constitutional import, Congress can rectify our mistake, if such it was, or change its policy at any time, and in these circumstances reversal is not readily to be made.' United States v. South Buffalo R. Co., 333 U.S. 771, 774–775, [68 S. Ct. 868, 870, 92 L.Ed. 1077]." Patterson v. United States, 359 U.S. 495, 496, 79 S.Ct. 936, 937, 3 L.Ed.2d 971 (1958).

This circuit in Preferred Insurance Co. v. United States, 222 F.2d 942; cert. denied 350 U.S. 837, 76 S.Ct. 74, 100 L. Ed. 747 (1955), stated at page 945, concerning the *Feres* case:

> "The decision was unanimous and in the more than four years since it was rendered Congress has not amended the Tort Claims Act. Accordingly, the opinion must be accepted as dispelling any doubt as to the congressional intent in the adoption of the Act."

### The Circuit Decisions

The circuit courts have consistently followed the rule stated in *Feres* "that the government is not liable under the Federal Tort Claims Act for injuries to servicemen when the injuries arise out of, or are in the course of activity incident to service." (340 U.S. at 146, 71 S.Ct. at 159). The rule has been applied both when the tortious act was committed by service personnel and when it was committed by civilian personnel of the government.

(a) *Case where the tortious act was committed by service personnel:* Preferred Ins. Co. v. United States, 222 F. 2d 942 (9 Cir. 1955); cert. denied 350 U.S. 837, 76 S.Ct. 74, 100 L.Ed. 747 (Air Force plane crashes into trailers of enlisted men on base). Archer v. United States, 217 F.2d 548 (9 Cir. 1954). (Military academy cadet killed in crash of air force plane while on leave). Van Sickel v. United States, 285 F.2d 87 (9 Cir. 1960). (Death of serviceman in government hospital). Callaway v. Garber, 289 F.2d 171 (9 Cir. 1961). (Air Force sergeant killed in collision with car driven by Navy officer on government business). Knoch v. United States, 316 F.2d 532 (9 Cir. 1963). (Action by sailor for malpractice of Navy doctor). Bailey v. De Quevedo, 375 F.2d 72 (3 Cir. 1967). (Enlisted man's action for malpractice in Army hospital). Buckingham v. United States, 394 F.2d 483 (4 Cir. 4/29/68). (Air Force service man died because of alleged negligence of doctor and attendants at Air Force hospital). Zoula v. United States, 217 F.2d 81 (5 Cir. 1954). (Students on tour of military duty struck by army ambulance on military base). Orken v. United States, 239 F.2d 850 (6 Cir. 1956). (Air Force officer killed when government plane crashed into his house). O'Brien v. United States, 192 F.2d 948 (8 Cir. 1951). (Member of Organized Navy Reserve killed by alleged negligence of navy pilot). United States v. Carroll, 369 F.2d 618 (8 Cir. 1966). (Reservist in uniform, en route to reserve drill, killed in crash of Navy plane). Chambers v. United States, 357 F.2d 224 (8 Cir. 1966). (Airman killed in pool on Air Force base).

(b) *Cases where at least one tortfeasor not connected with the Military.* Layne v. United States, 295 F.2d 433 (7 Cir. 1961); cert. denied 368 U.S. 990, 82 S.Ct. 605, 7 L.Ed.2d 527 (Major in national guard on training flight fatally injured through alleged negligence of

U.S. civilian employee at United States airfield). Sheppard v. United States, 369 F.2d 272 (3 Cir. 1966); cert. denied 386 U.S. 982, 87 S.Ct. 1286, 18 L.Ed.2d 230 (Death of three Marines growing out of same crash involved in instant case. Though not shown in the per curiam, the complaint alleged negligence "of members of the United States Air Force *and others,*" a reference to the F.A.A. employees). United Air Lines, Inc. v. Wiener, 335 F.2d 379, 396–398, 402, 404 (9 Cir. 1964); cert. denied 379 U.S. 951, 85 S.Ct. 452, 13 L.Ed.2d 549). (Government not liable for injuries to servicemen arising out of activities incident to service even though government's liability predicated in part, upon negligence of employees of C.A.A.).

### Status of Plaintiff v. Status of Tortfeasor

The Supreme Court and Circuit cases are consistent in holding that the status of the deceased or injured person controls. If his injury or death was connected with the military, the claimant may not recover under the Tort Claims Act.

The court below has substituted the *status* of the tortfeasor as a basis for its decision. The complaint alleged that the negligence was that of civilian employees of the government. To so hold, the court has turned its back on all the Supreme Court cases.

In the ordinary Tort Claim case, where a person with a civilian status is injured or dies, the claimant has his rights under the Tort Claims Act, regardless of the civilian or military status of the individual tortfeasor. An agent of the government has committed the wrong and the government is held liable. There is no logical distinction between the status of the civilian or the military tortfeasor.

There is logic however, in the Supreme Court and Circuit cases, holding that the status of the person whose injury or death gives rise to the claim, is the status that controls.

### The Rationale of Other Available Compensation

The Supreme Court in the *Feres* case, recognized the relationship existing between the United States and its military personnel as one "distinctively federal in character" and that the application of local law to that relationship by virtue of the Tort Claims Act would be completely inappropriate. (340 U.S. at 143, 144, 71 S.Ct. 153, 95 L.Ed. 152). It also stressed the fact that the Act "should be construed to fit, so far as will comport with its words, into the entire statutory system of remedies against the Government to make a workable, consistent and equitable whole," (340 U.S. at 139, 71 S.Ct. at 156), and that it was thus highly relevant that Congress had already provided "systems of simple, certain and uniform compensation for injuries or death of those in the armed services." (340 U.S. at 144, 71 S.Ct. at 158).

The concept of "service—incident injury" set forth in the *Feres* decision was not wholly novel, but instead was one with ready context within the frame work of Workmen's Compensation statutes. (340 U.S. 143, 146, 71 S.Ct. 153). It is clear that the court contemplated its definition of the phrase "incident to service" in terms of the Workmen's Compensation concept of "course of employment." See United States v. Forfari, 268 F.2d 29, 33–34 (9 Cir. 1959); cert. denied 361 U.S. 902, 80 S.Ct. 211, 4 L.Ed.2d 157. The concept of the "course of employment" in Workmen's Compensation is not limited to injury inflicted by fellow employees or otherwise dependent upon the status of the tortfeasor. For example, O'Leary v. Brown-Pacific-Maxon, 340 U.S. 504, 506–507, 71 S.Ct. 470, 95 L.Ed. 483.

■ The rationale in *Feres* of the effect of "systems of simple, certain and uniform compensation for injuries or death of those in the armed services," (340 U.S. at 144, 71 S.Ct. at 158) is still a good one. The Supreme Court has made consistent application of this rationale in analogous situations, holding

that where Congress has provided a form of administrative compensation for government employees injured in the performance of their duties, the availability of such a remedy precludes recourse to a tort suit against the government.

In Johansen v. United States, 343 U.S. 427, 72 S.Ct. 849, 96 L.Ed. 1051 (1952) a civilian employee of the United States who was a member of a crew of a public vessel (not a merchant vessel), was not permitted relief under the Public Vessels Act, 43 Stat. 1112 et seq., 46 U.S.C. § 781 et seq., because his remedies under the Federal Employees Compensation Act, 39 Stat. 742 et seq., 5 U.S.C. § 751 et seq., were held to be exclusive. The Court found it had a duty "to attempt to fit the Public Vessels Act, as intelligently as possible, 'into the entire statutory system of remedies against the Government to make a workable, consistent and equitable whole.'" Quoting and citing *Feres*.

In Patterson v. United States, 359 U.S. 495, 79 S.Ct. 936, 3 L.Ed.2d 971 (1959) the court rested its decision on *Johansen,* supra, and held certain employees of the United States, who were entitled to benefits under the Federal Employees Compensation Act, supra, did not have a right against the government under the suits in Admiralty Act, 41 Stat. 525 et seq., 46 U.S.C. § 741 et seq., as seamen on government vessels in merchant service.

United States v. Demko, 385 U.S. 149, 87 S.Ct. 382, 17 L.Ed.2d 258 (1966) and United States v. Muniz, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805, fit precisely into the compensation rationale. In *Demko* the prisoner had a right to and had received an award for compensation under 18 U.S.C. § 4126, applying to Federal Prison Industries Inc. The case denied him the right to seek a remedy under the Tort Claims Act. In *Muniz,* as explained in *Demko* (page 153, 87 S.

2. For non-exclusive remedies of the dependents of a serviceman, see the case

Ct. at page 385) "* * * the two prisoners there involved, who were not protected by the prison compensation law, were not barred from seeking relief under the Federal Tort Claims Act." In *Muniz* the court noted it found "no occasion to question [the holding in] *Feres.*" (374 U.S. at 159, 83 S.Ct. at 1856).

Appellee argues that there is no exclusive remedy by statute granting benefits to the widow and children of the decedents.[2] However, the case law above cited has shown that the Supreme Court, in the absence of a statutory provision that the compensation remedy be exclusive, has held that where there exists a form of administrative compensation for government employees injured in the performance of their duties, the availability of such remedy precludes government liability on · some other ground. In Johansen v. United States, supra, the court noted that * * * "Congress did not specifically declare that the Compensation Act was exclusive of all other remedies." (343 U.S. at 433, 72 S.Ct. at 854). The same Compensation Act was involved in Patterson v. United States, supra. In *Demko,* supra, the compensation under 18 U.S.C. § 4126 was not made the exclusive remedy by statute. The court found it to be.

### The Rationale of Discipline

It is true that in United States v. Brown, supra, the court stated:

"The peculiar and special relationship of the soldier to his superiors, the effects of the maintenance of such suits on discipline, and the extreme results that might obtain if suits under the Tort Claims Act were allowed for negligent orders given or negligent acts committed in the course of military duty, led the Court [in *Feres*] to read that Act as excluding claims of that character." (348 U.S. at 112, 75 S.Ct. at 143).

note in 45 No. Carolina Law Review 1129, at 1138–39 (1967).

And in United States v. Muniz, 374 U.S. 150, 162, 83 S.Ct. 1850, 1858 (1963), the court said:

"In the last analysis, *Feres* seems best explained by" the above explanation from *Brown*.

But the statement in *Brown* is not an alteration of *Feres*. It is rather simply an explanation of *Brooks* and *Brown*. It sets forth reasons why servicemen injured outside the "course of military duty" are exempt from the general rule that where compensation has been provided, Tort Claim suits may not be maintained. Although the rule of nonliability for injuries to servicemen "incident to service" is designed to avoid interference with military discipline, the Supreme Court has never indicated that *Feres* should be limited to situations which pose a threat or interference with military discipline.

In the case at hand, the threat of military discipline is far more direct than it was in *Feres*. In the three cases decided in *Feres*, one involved a sleeping soldier who died from alleged negligence in the maintenance of a defective heating plant, and the other two involved soldiers injured by alleged malpractice.

In the case at bar, although the employees of the F.A.A. were not members of the armed services, they were engaged in the performance of a service for the military in connection with the take-off of an Air Force plane from a military base. When the two Marines whose claims are here involved, boarded the military plane, they did so under the compulsion of military orders; they were at all times subject to the discipline of the military personnel in charge of the airplane, as well as the commands of their superiors aboard the aircraft. Thus, the considerations of discipline which in part underlie the *Feres* rule are strikingly present here.

On the other hand, compare the three cases decided in *Feres*. The necessity of maintaining discipline while a soldier is asleep or on an operating table is far less clear than the necessity for maintaining discipline among soldiers being transported for military service in military aircraft under control of military authorities.

The problem presented by the language in *Brown*, supra, concerning discipline etc., has been met and decided by this circuit. In Callaway v. Garber, 289 F.2d 171, 173–174 (9 Cir. 1961); cert. denied 368 U.S. 874, 82 S.Ct. 120, 7 L.Ed. 2d 76, an Air Force officer was killed in a collision with another vehicle driven by a Navy officer. The case fell squarely within *Feres*, growing out of activities "incident to service" but did not seem to fit the explanation offered in *Brown*. This circuit decided the case in accordance with *Feres*, holding that the Tort Claims action could not be maintained. The court stated:

"The instant case can find no shelter within those reasons [in *Brown*], since the negligent and injured parties here were members of different branches of the service and were engaged in entirely different and unconnected activities at the time of the accident. However, the instant case does fall within the rule of the *Feres* case as promulgated, and we must adhere to said rule since it was in no way negated or modified by the later *Brown* case." (pages 173–174).

*Conclusion*

 The district court conceded that *Feres* controlled unless its holding had been eroded away. Despite the Supreme Court holdings, the fact that Congress had not corrected the *Feres* ruling by amendment of the Tort Claims Act, and the line of circuit cases following *Feres*, including cases in this circuit, the district court decided *Feres* was no longer the law. This district court's views and judgment stand alone in conflict with the views of the Supreme Court, Congress and this and other circuits.[3]

3. For other case notes concerning the decision in the district court below, see 18 Western Reserve Law Review 1788 (1967), 18 Syracuse Law Review 887 (1967).

In Van Sickel v. United States, 285 F.2d 87 (9 Cir., 1960) the contention was made that *Feres* did not apply, and that the state wrongful death statute gave the serviceman's representatives a right of action independent of that existing in the serviceman before death. This court ruled that if *Feres* was to "be restricted so as to permit recovery in cases of the type of the instant case, such restriction should be made by the Supreme Court and not by this court." (p. 91).

The judgment is reversed.