Betty CALHOUN et al.

v.

UNITED STATES of America et al.

Civ. No. 76–937–E.

United States District Court,
S. D. California.

May 26, 1977.

J. Warren Beall, Oceanside, Cal., for plaintiffs.

Terry Knoepp, U. S. Atty., Donald F. Shanahan, Asst. U. S. Atty., San Diego, Cal., for defendants.

## MEMORANDUM DECISION AND ORDER

ENRIGHT, District Judge.

This case presents an important application of a court-made exception to the Federal Tort Claims Act for injuries arising incident to military service. Plaintiffs, the survivors of a Marine Corps recruit, have brought this action for wrongful death against the United States and individuals in decedent's chain of command. Defendants have filed a motion to dismiss, or in the alternative, for summary judgment. Upon duly considering the oral argument of counsel on May 16, 1977 and all the memoranda, affidavits and exhibits submitted in support thereof, this court does hereby grant defendants' motion to dismiss this action.

### I

Before attending to the merits of this motion, a brief statement of the facts of this case is necessary to put this court's decision in its proper perspective.

The decedent, Lynn E. McClure, first applied for enlistment into the United States Marine Corps in Lufkin, Texas on September 24, 1975. His vocational aptitude (ASVAB) test score in the seventh percentile caused a rejection of his application. On November 12, 1975 decedent reapplied in Austin, Texas and received a passing score in the fifty-ninth percentile. In his second application decedent made false statements that he had not previously applied to enlist in the Corps, that he had never been confined in a mental institution, and that he had never been arrested for or convicted of an offense.

Upon the false application decedent was accepted into the Corps. He signed an enlistment contract for a four-year term on November 14, 1975 and arrived at the Marine Corps Recruit Depot in San Diego the following day. Twice within the next three weeks decedent went on unauthorized leave and was confined to correctional custody for a period of seven days. After his release, on December 6, 1976, decedent was assigned to the "motivation platoon." It is not disputed that on this date decedent was compelled to engage in several pugil stick training bouts at the direction of the supervising officer. During one of these bouts decedent fell unconscious. He was transported to the Naval Hospital in San Diego and later transferred to the Veterans Administration Hospital in Houston, where he died on March 13, 1976.

Plaintiffs filed administrative claims with the Department of the Navy on April 3, 1976, which were denied by lapse of six months.[1] The complaint in this action was filed October 6, 1976, alleging wrongful death under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2671 *et seq.,* and deprivation of constitutional rights contained in Article I, Section 8 and the Fourth, Fifth, Eighth and Thirteenth Amendments under 28 U.S.C. § 1331. Plaintiffs allege that the enlistment contract entered by decedent was voidable by reason of his incompetency, and further that the recruitment of decedent and his death were caused by violations of the Marine Corps' own regulations.

### II

A motion to dismiss an action for failure to state a claim or for want of subject matter jurisdiction may be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support

---

1. 28 U.S.C. § 2675(a).

of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Sherman v. Yakahi,* 549 F.2d 1287 (9th Cir. 1977). It is apparent that defendants' motion to dismiss is founded upon both lack of subject matter jurisdiction and failure to state a claim for which relief can be granted. Federal Rule of Civil Procedure 12(b)(1) and (6). The above-quoted standard is often cited in Rule 12(b)(6) motions, but is equally applicable in motions challenging subject matter jurisdiction when such jurisdiction may be contingent upon factual matters in dispute.

Initially, defendants move to dismiss the cause of action for wrongful death under the Federal Tort Claims Act upon the ground that the court-made exception to the Act pronounced in *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950) bars such a claim. The Court held that the United States is not liable under the Act "for injuries to [active duty] servicemen where the injuries arise out of or are in the course of activity incident to service." *Supra,* at 146, 71 S.Ct. at 159. The rationale for this limitation on liability includes the maintenance of discipline in the relationship between the serviceman and his or her superiors, the orderly conduct of military affairs by eliminating the duty to defend lawsuits, and the uniform system of compensation for injuries to servicemen established by Congress.[2] *Supra,* at 141, 144, 71 S.Ct. 153; *Henninger v. United States,* 473 F.2d 814, 815–16 (9th Cir. 1973). The Court of Appeals for the Ninth Circuit in *Henninger, supra,* has strictly applied the *Feres* Doctrine by holding that it "*absolutely* bars Federal Tort Claims actions by serviceman." (emphasis added).

Plaintiffs contend that two factors existing in the instant case should preclude an application of the *Feres* bar. First, they contend that decedent's alleged mental incompetency at the time of execution of the enlistment contract creates a voidable obligation. They argue that this voidability eliminates not only the duty of service but other constraints, such as the *Feres* limitation on tort liability. Second, they contend that a violation of Marine Corps regulations[3] either precludes application of the *Feres* Doctrine or creates a due process violation for which plaintiffs should be afforded recovery.

For several reasons the court is not persuaded that mental incompetency at the time of execution of an enlistment contract, if proven, would create an exception to the *Feres* Doctrine. First, the factual determination of competency creates precisely the type of operation which the Ninth Circuit in *Henninger, supra,* sought to avoid. There, plaintiff adjured the court to make a determination on the effect his suit would have on military discipline. That court declined

---

**2.** The *Feres* decision outlined the uniform compensation system then available to injured servicemen. *Supra,* 340 U.S. at 144, n. 12, 71 S.Ct. 153. Congress has subsequently enacted a *uniform system of death benefits for survivors* of servicemen who die while on active duty. 10 U.S.C. § 1475 *et seq.* Such compensation includes the payment of a death gratuity (§§ 1475–1480) and expenses incident to death (§ 1482). Although the benefits provided by Congress do not approach the amounts prayed for in the instant complaint, the disparity is not persuasive to a court considering an action to which the *Feres* Doctrine is potentially applicable. Judge Chambers stated in *Bailey v. Van Buskirk,* 345 F.2d 298 (9th Cir. 1965):

> The military service does not leave those permanently injured in the line of duty uncompensated. Congress has attended to such things in a reasonably adequate way.

All we deny plaintiff-appellant is a remedy he likes better.

In the years since *Feres,* the courts have often commented upon the harsh results generated by application of the doctrine. However, despite invitations to correct this interpretation of the Federal Tort Claims Act in *Feres, supra,* 340 U.S. at 138, 71 S.Ct. 153, and in later decisions, *e. g., United States v. Lee,* 400 F.2d 558 (9 Cir. 1968), *cert. denied,* 393 U.S. 1053, 89 S.Ct. 691, 21 L.Ed.2d 695 (1969), no amendments have been enacted. The passage of twenty-seven years since the *Feres* decision leaves little doubt as to congressional intent in this area.

**3.** Plaintiffs cite no specific regulations that were violated. However, they generally contend that Marine Corps regulations pertaining to the recruitment, detention and training of decedent were infringed.

to make any factual determinations which would limit its "absolutist reading of *Feres*" because "nearly every case would have to be litigated and it is the suit, not the recovery, that would be disruptive of discipline and the orderly conduct of military affairs." *Henninger, supra* at 815–16.

Second, while the court is conscious of the trend of the law to apply modern contract principles to military enlistment contracts, *Novak v. Rumsfeld,* 423 F.Supp. 971, 972 (N.D.Cal.1976), the power to avoid a contract must accrue equally to all parties. This court would not formulate a rule of voidability for an enlistee's misrepresentations that would operate to deprive that serviceman of statutory medical or death benefits for injuries suffered incident to military service. For example, if decedent had not died but had suffered a permanent disability, this court would not authorize a withholding of medical benefits on the ground that the enlistment contract was voidable as a result of decedent's enlistment misrepresentations.[4]

Third, the court finds that case law would not support avoidance of the *Feres* rule by assertion of incompetency to contract for military service. In *Southard v. United States,* 397 F.Supp. 409 (E.D.Pa.1975), *aff'd* 535 F.2d 1247 (3rd Cir. 1976), plaintiff unsuccessfully attempted to avoid the *Feres* rule by contending that malpractice in his preinduction physical created a void and illegal induction. Also germane to plaintiffs' contention of incompetency is the case of *Henninger, supra.* There, the court found that the United States was not estopped from invoking the *Feres* Doctrine because it made misrepresentations which indirectly caused that plaintiff's injury. That court held that no representations by Government agents could waive the immunity granted by the *Feres* Doctrine. Plain-

tiffs here contend that Government agents were remiss in failing to detect decedent's incompetency prior to induction. It is clear that neither malpractice, misrepresentation, nor omission by a Government agent affect the bar to suit established by *Feres*.[5]

Similarly, alleged violation of Marine Corps regulations cannot affect this impediment to recovery. The conduct of an officer, albeit in violation of Marine Corps regulations, does not waive the Government's immunity. *Henninger, supra.* In *McCord v. United States,* 377 F.Supp. 953 (M.D.Tenn.1972), *aff'd* 477 F.2d 599 (6th Cir. 1973), the court rejected an argument that a violation of regulations would preclude the application of *Feres.*

The result is not changed by the fact that Sgt. Klay was negligent in the conduct of cleaning his weapon, or even that it was a needless act which was *unauthorized at this particular station.* The crucial element is that the accident resulted from activities engaged in by active duty personnel in the course of military duty. (emphasis supplied).

*Supra,* at 954.

Thus, the United States may not be sued for injuries incurred incident to military service. Once this immunity is established it is certain that the individual defendants are also immune from suit. It is clearly the law in this circuit that one soldier may not sue another for injuries suffered attendant to military service. *Bailey, supra; Mattos v. United States,* 412 F.2d 793 (9th Cir. 1969). This rule must certainly apply to all individual defendants who were joined merely because they were superiors in decedent's chain of command.

### III

Plaintiffs additionally seek recovery for alleged infringement of constitutional

---

**4.** This court does not hold that an enlistment contract is never voidable. It merely holds that military benefits cannot be obtained or withheld by claiming voidability after the occurrence of an injury for which those benefits are sought.

**5.** This court need not decide whether *plaintiffs* are estopped from asserting incompetency. It was argued by defendants that the misrepresentations of decedent prevented discovery of his incompetency. See *United States v. Georgia-Pacific Co.,* 421 F.2d 92, 96 (9th Cir. 1970). The court's resolution above makes determination of this issue unnecessary.

rights. The court finds that the theory of constitutional deprivation is essentially a restatement of the cause of action in tort. In a similar case presenting a dual theoretical basis, *Rotko v. Abrams,* 338 F.Supp. 46 (D.Conn.1971), *aff'd* 455 F.2d 992 (2d Cir. 1972), decedent's survivors sought recovery for the death of decedent in Vietnam under the Federal Tort Claims Act and for alleged violation of constitutional rights. Citing the broad Ninth Circuit holding in *United States v. Lee,* 400 F.2d 558 (1968), *cert. denied,* 393 U.S. 1053, 89 S.Ct. 691, 21 L.Ed.2d 695 (1969), that court held that the action was barred under the *Feres* rule because "it is the status of the claimant as a serviceman rather than the legal theory of his claim which governs in such cases." *Rotko, supra,* at 47.

Moreover, there is some authority to limit recovery for alleged constitutional deprivations when the claim is customarily recognized under existing bodies of state tort law or the Federal Tort Claims Act, which incorporates state tort law.[6] In *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), plaintiff brought an action in federal court under the Fourteenth Amendment and civil rights statutes to redress an allegedly libelous statement by a local police officer. The Court found that the Fourteenth Amendment's Due Process Clause should not be extended and superimposed upon pre-existing systems of state tort law. The decision is germane to the instant case. Absent the deprivation of a *recognized* constitutional right, it would subvert the application of the Federal Tort Claims Act and its defined exceptions to allow a litigant to superimpose over that body of law extensions of constitutional rights which were never intended to apply in this context.

This court does not hold that a constitutional provision will never override the Act or doctrines adopted thereunder. Indeed, the Constitution remains the "supreme Law of the Land." Article VI. The court holds only that the instant case presents issues to be resolved under the Federal Tort Claims Act and does not raise any recognized constitutional deprivation.[7]

Accordingly, the court does not hereby find that the motion to dismiss is granted as to all defendants. Judgment shall be entered accordingly.

---

6. Whether the United States is liable under the Act depends upon whether a private individual *under similar circumstances would be liable* under state law. *United States v. Muniz,* 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963).

7. For example, despite decedent's status as an enlistee, it is clear that even conscripted service does not violate the Thirteenth Amendment. *United States v. Gidmark,* 440 F.2d 773 (9th Cir.), *cert. denied,* 404 U.S. 868, 92 S.Ct. 141, 30 L.Ed.2d 112 (1971). Historically, the prohibition against "cruel and unusual punishments" under the Eighth Amendment has been limited to criminal punishment. *Ingraham v. Wright,* 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977). There is no support for the proposition that recovery may be obtained against those *other than* law enforcement officers for violation of the Fourth Amendment. *See,* 28 U.S.C. § 2680(h); *Bivens v. Six Unknown Federal Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Nor is there support for extending the rule of *Bivens, supra,* to Fifth Amendment due process violations. *Archuleta v. Callaway,* 385 F.Supp. 384, 388 (D.Colo. 1974). No comment need be made upon plaintiffs' allegation of Article I violations.