581 F.2d 785
 Elaine Ann DABERKOW, surviving widow of Bernd Paul Heinrick
Daberkow, Deceased, and Brian David Daberkow, a minor and
surviving son of Bernd Paul Heinrick Daberkow, Deceased, by
Sylvia E. Johnson, his guardian ad litem, Plaintiffs-Appellants,
v.
The UNITED STATES of America, Defendant-Appellee.
 No. 76-1994.
 United States Court of Appeals,
Ninth Circuit.
 Sept. 11, 1978.
 
 1
 J. Stephen Simon, Scottsdale, Ariz., for plaintiffs-appellants.
 
 
 2
 Michael Kimmel, Washington, D.C., Francis S. Ainsa, Jr., of Ainsa & Ainsa, El Paso, Tex., for defendant-appellee.
 
 
 3
 On Appeal from the United States District Court for the District of Arizona.
 
 
 4
 Before KILKENNY, Senior Circuit Judge, TRASK, Circuit Judge, and HAUK, District Judge.*
 
 HAUK, District Judge:
 I. INTRODUCTION
 
 5
 This appeal from the District Court's order granting the defendant's motion for summary judgment raises the heretofore unanswered question of whether a tort claim lies against the United States for the death or injury of a foreign serviceman when his injury or death occurs as a result of performing duties incident to joint military activities. The District Court ruled that the doctrine enunciated in Feres v. United States, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), barred such a claim. We affirm.II. STATEMENT OF FACTS
 
 
 6
 In May of 1971, the United States and the Federal Republic of Germany executed a contract, pursuant to which the United States was to provide F-104G aircraft flight training to German Air Force student pilots. The two governments then further specified their respective rights and duties regarding F-104G pilot training in a document entitled "An Agreement Between the Federal Minister of Defense of the Federal Republic of Germany and the United States."
 
 
 7
 Pursuant to the contract and agreement, the Second German Air Force Training Squadron was, during the period relevant to this case, stationed at Luke Air Force Base, Arizona, for F-104G flight training of its members. In managing this program, the two governments divided responsibilities. The commanding officer of the German Squadron, Lt. Col. Horst H. Wilhelms, German Air Force, had responsibility for administrative supervision of the Squadron members. The German government was responsible for supplying the requisite number of aircraft for training and maintenance. The United States Air Force was responsible for providing base support facilities and instructional training in order to produce approximately 100 combat capable F-104G pilots per year.
 
 
 8
 Lt. Bernd Paul Heinrick Daberkow was an officer in the West German Luftwaffe assigned to the Second German Air Force Training Squadron at Luke Air Force Base. On June 22, 1972, Lt. Daberkow was piloting an F-104G jet on a solo training flight originating from Luke Air Force Base. In a separate aircraft, Major Lawrence E. Knox, United States Air Force, accompanied and instructed Lt. Daberkow. At approximately 9:45 a. m. on that date, Lt. Daberkow attempted a loop maneuver after entering a cloud and apparently lost visual contact and spatial reference. Lt. Daberkow's F-104G crashed to the ground, killing him instantly.
 
 
 9
 Following the accident, the widow and surviving son of Lt. Daberkow, both United States citizens, sought relief from both the West German and United States governments. Since July 1, 1972, the Federal Republic of Germany, after finding that Lt. Daberkow's death resulted from the performance of military service, has paid a monthly award of 256 DM and 71 DM to the widow and child, respectively, pursuant to the Soldiers Assistance Act and the Federal Public Assistance Act of that nation. In addition, the West German government paid the survivors a lump death benefit of 7,161.82 DM and an interim assistance award of 11,936.89 DM under the Soldiers Assistance Act. Furthermore, the widow and son have been receiving annuities of 360.80 DM and 160.30 DM, respectively, under the West German government's insurance system for governmental employees.
 
 
 10
 In this country, the United States Air Force investigated the accident in accordance with standard procedures and prepared a Collateral Board Report and an Aircraft Accident Report. The widow and child then filed a tort claim with the United States Air Force on December 15, 1972. The Department of the Air Force denied the claim on June 27, 1973.
 
 
 11
 Lt. Daberkow's widow and child then filed suit against the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671 Et seq., in the District Court for the District of Arizona. The complaint alleged that members of the United States Air Force, particularly Major Knox, acted negligently in permitting Lt. Daberkow to fly under the weather conditions; in ordering him to perform the loop maneuver, given all the circumstances; in failing to maintain proper radio and visual contact; and by violating safety regulations and procedures. The United States denied the allegation of negligence and raised affirmative defenses.
 
 
 12
 The plaintiffs then served subpoenas duces tecum on the Squadron and on Lt. Col. Wilhelms, its commanding officer. Counsel for these parties moved for an order (1) limiting the testimony of Lt. Col. Wilhelms; (2) precluding him from producing any official documents; and (3) quashing the subpoena served on the Squadron. On February 19, 1974, the District Court issued an Order severely limiting the plaintiffs' discovery. Primarily relying on a Diplomatic Note presented to the United States Department of State by the Federal Republic of Germany stating that Lt. Col. Wilhelms is not authorized to testify with regard to his official duties or to produce official records, the District Court ordered that plaintiffs should not examine Lt. Col. Wilhelms on oral deposition on matters relating to performance of his official duties; that Lt. Col. Wilhelms need not produce any official records of the Federal Republic of Germany; and that the subpoena duces tecum served on the Squadron be quashed. Plaintiffs sought immediate appellate review of this Order, but this Court dismissed plaintiffs' interlocutory appeal on March 10, 1975, as premature.
 
 
 13
 The United States then moved for summary judgment on the ground that no tort claim against the United States lies for the death or injury of a foreign serviceman when his death or injury occurs as a result of performing duties incident to joint military activities. Agreeing with the government's position, and relying on Feres v. United States, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), the District Court dismissed plaintiffs' action and rendered judgment in favor of the defendant United States on February 25, 1976.
 
 III. ISSUES ON APPEAL
 
 14
 On appeal, the plaintiffs challenge both the District Court's discovery order of February 19, 1974 and its judgment dismissing the action of February 25, 1976. Since we agree with the District Court that the Feres doctrine bars their Federal Tort Claims Act action, we affirm the District's Court's judgment of February 25, 1976, dismissing the action, and find it unnecessary to reach the appeal from the February 19, 1974, discovery order.
 
 IV. DISCUSSION
 
 15
 In Feres v. United States, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1953), the Supreme Court held that the United States "is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." Id. at 146, 71 S.Ct. at 159. Accord, e. g., Henninger v. United States, 473 F.2d 814 (9th Cir. 1973), Cert. denied, 414 U.S. 819, 94 S.Ct. 43, 38 L.Ed.2d 51 (1973); United States v. Lee, 400 F.2d 558 (9th Cir. 1968), Cert. denied, 393 U.S. 1053, 89 S.Ct. 691, 21 L.Ed.2d 695 (1969); Callaway v. Garber, 289 F.2d 171 (9th Cir. 1961). While this case would fall directly within the scope of the Feres rule if Lt. Daberkow had been a member of the United States military, neither the Feres decision nor any decisions subsequent thereto have resolved the question presented in this appeal of whether the same rule should apply to a foreign serviceman with American survivors, who is injured or killed while performing duties incident to joint military activities in the United States.
 
 
 16
 In cases decided subsequent to Feres, both the Supreme Court and this Court have looked to the factors underlying the Feres decision as the basis for determining, in fact situations not precisely identical with Feres, whether the Feres rule should apply. See Stencel Aero Engineering Corp. v. United States, 431 U.S. 666, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1977); United States v. Brown, 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed. 139 (1954); Henninger v. United States, 473 F.2d 814 (9th Cir. 1973), Cert. denied, 414 U.S. 819, 94 S.Ct. 43, 38 L.Ed.2d 51 (1973); United States v. Lee, 400 F.2d 558 (9th Cir. 1968), Cert. denied, 393 U.S. 1053, 89 S.Ct. 691, 21 L.Ed.2d 695 (1969). Thus, this Court must identify the factors underlying the Feres rule and evaluate whether those factors justify application of the Feres rule to this particular case.
 
 
 17
 Fortunately, the Supreme Court has recently discussed the factors underlying the Feres rule. In Stencel Aero Engineering Corp. v. United States, 431 U.S. 666, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1977), that Court identified the two factors explicitly considered in Feres, and another not explicitly considered in Feres but explicated in later decisions. The first factor identified by the Court is the distinctively federal nature of a relationship between the federal government and members of its Armed Forces. This factor suggests that the Federal Tort Claims Act should be inapplicable to service-connected injuries because under the Act the law of the state where the act or omission occurred governs liability, 28 U.S.C. § 1346(b), and because "it would make little sense to have the Government's liability to members of the Armed Services dependent on the fortuity of where the soldier happened to be stationed at the time of the injury." Stencel Aero Engineering Corp. v. United States, 431 U.S. at 671, 97 S.Ct. at 2058. See Feres v. United States, 340 U.S. at 143, 71 S.Ct. 153.
 
 
 18
 The second factor identified by the Court as an underlying basis for the Feres rule is the existence of some form of substitute compensation for injured servicemen, such as the Veterans' Benefits Act. Stencel Aero Engineering Corp. v. United States, 431 U.S. at 671, 97 S.Ct. 2054. See Feres v. United States, 340 U.S. at 145, 71 S.Ct. 153. See also United States v. Lee, supra, 400 F.2d at 562-63. As the Court stated in Feres, the "primary purpose" of the Federal Tort Claims Act "was to extend a remedy to those who had been without." 340 U.S. at 140, 71 S.Ct. at 156.
 
 
 19
 The third factor underlying the Feres rule, although not explicitly mentioned in Feres, is the "peculiar and special relationship of the soldier to his superiors, the effects of the maintenance of such suits on discipline, and the extreme results that might obtain if suits under the Tort Claims Act were allowed for negligent orders given or negligent acts committed in the course of military duty . . . ." Stencel Aero Engineering Corp. v. United States, 431 U.S. at 671-72, 97 S.Ct. at 2058, Quoting United States v. Brown, 348 U.S. 110, 112, 75 S.Ct. 141, 99 L.Ed. 139 (1954). See also United States v. Muniz, 374 U.S. 150, 162, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963) (concluding, after reviewing the decision, that Feres seems "best explained by" this factor); and United States v. Lee, supra, 400 F.2d at 563-64.
 
 
 20
 Examination of the facts of the case before us in the light of these three factors demonstrates that the Feres rule should apply here. The first factor underlying that rule applies with equal force here because a foreign serviceman engaged in joint military activities could be injured wherever he happened to be stationed, just as an American serviceman could, and it would, just as in the case of an American serviceman, "make little sense" for the scope of the government's liability to a foreign serviceman or his dependents to depend on the fortuity of the location of his duty station. The second factor underlying the Feres rule is also equally applicable to the facts of this case because the West German government has been compensating and continues to compensate Lt. Daberkow's widow and child for Lt. Daberkow's death under applicable West German law. While the substitute compensation involved here does not come from the United States, that fact does not alter our conclusion, because the presence of this compensation satisfies the purpose of this factor, ensuring compensation for the injured person whatever its source. The third factor underlying the Feres rule is likewise present. The relationship between a foreign soldier engaged in joint military activities and his American superiors is similar to the relationship of an American soldier to an American superior; military discipline could be disrupted just as much by a foreign serviceman's law suit as by an American's; and liability for negligent orders would be equally detrimental whether the serviceman asserting a claim is a member of the United States or a foreign military. Thus, after considering the factors underlying the Feres doctrine, we conclude that the District Court properly held the rule enunciated in Feres, which prohibits actions brought for injuries to servicemen arising out of activity incident to their service, should apply with equal force in this case, although the serviceman is not a member of the United States military.
 
 
 21
 Furthermore, the agreements between the United States and the Federal Republic of Germany buttress this conclusion. Article 7 of the German-United States agreement provides that "the 'Agreement Between the Parties to the North Atlantic Treaty regarding the Status of their Forces' shall apply with respect to this Agreement." That NATO Agreement, (1951) 4 U.S.T. 1792, T.I.A.S. No. 2846, known as SOFA, specifies that claims arising out of the acts or omissions of a member of an armed force of one nation done in the performance of official duties and causing damage to third parties in a receiving nation shall be adjudicated by the laws of the receiving nation. Article VIII, P 5. While the provision does not precisely cover the situation presented in this case, this provision does suggest, as the District Court pointed out, that the foreign serviceman is "assimilated" into the United States military for this limited consideration.
 
 
 22
 While this result leaves the survivors of Lt. Daberkow, who are United States citizens, without a remedy against the United States under the Federal Tort Claims Act, this practical result is similar to the results reached by the Supreme Court in Feres. If Congress wishes to create a remedy for persons in the position of Lt. Daberkow's widow and child, it may certainly do so. This Court, however, may not depart from established law without such a command from Congress. See Feres v. United States, 340 U.S. at 146, 71 S.Ct. 153.
 
 
 23
 Accordingly, the judgment of the District Court is Affirmed.
 
 
 
 *
 Hon. A. Andrew Hauk, United States District Judge for the Central District of California, sitting by designation