**SHAMMARA RICHARDS, Individually and as Personal Representative of the ESTATE OF CHARLES A. RICHARDS, JR. and as Guardian and Next of Kin of SHANEE A. RICHARDS and CHARLES RICHARDS,**
Plaintiff
v.
**UNITED STATES OF AMERICA, Defendant**

Civ. No. 1997-0034F

District Court of Virgin Islands

Div. of St. Croix

March 27, 1998

Lᴇᴇ J. Rᴏʜɴ, Esǫ., Christiansted, U.S.V.I., *for Plaintiff*

Jᴇꜰꜰʀᴇʏ Mᴏᴏʀʜᴇᴀᴅ, Esǫ., Christiansted, U.S.V.I., *for Plaintiff*

Mɪᴄʜᴀᴇʟ A. Hᴜᴍᴘʜʀᴇʏs, Esǫ., (Asst. U.S. Attorney), Christiansted, U.S.V.I., *for Defendant*

Cᴏʀᴇʏ L. Bʀᴀᴅʟᴇʏ, Mᴀᴊᴏʀ, (U.S. Army, U.S. Legal Services Agency), *for Defendant*

FINCH, *Judge*

**MEMORANDUM OPINION**

■ The Plaintiff sues for damages arising from the death of Private Charles A. Richards, Jr. contending that this Court has jurisdiction under the Federal Tort Claims Act ("FTCA").[1] 28 U.S.C.A. § 1346(b). The Defendant, United States of America, moves to dismiss for lack of subject matter jurisdiction, citing the *Feres* doctrine.[2] The *Feres* doctrine, which derives its name from the Supreme Court opinion *Feres v. United States*, is an exception to the waiver of immunity granted in the FTCA when a plaintiff's alleged injuries or death "arise out of or are in the course of activity incident to service." 340 U.S. 135, 146, 95 L. Ed. 152, 71 S. Ct. 153 (1950).

## I. Background

Richards, a private in the United States Armed Forces, stationed in Fort Knox, Kentucky, died in uniform on June 26, 1995 when his privately owned vehicle was struck by an Army fiveton truck operated by a member of the United States Army on Kentucky Highway 1638. Although Kentucky Highway 1638 is a public road, it runs through an easement of land granted by the Department of Army to the State of Kentucky.

According to the Plaintiff's statement of facts, Richards had been allowed to leave his duty station early that day to attend to his pregnant wife. The United States agrees that Richards was allowed

---

[1] The Federal Tort Claims Act permits civil actions against the United States:

> for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C.A. § 1346(b).

[2] The United States also filed motions for judgment on the pleadings pursuant to Feb. R. Civ. P. 12(c) and for summary judgment pursuant to Feb. R. Civ. P. 56 premised on the *Feres* doctrine. Rules 12(c) and 56 are not applicable to claims of immunity under the *Feres* doctrine. In cases in which the United States is immune from suit under the FTCA, and the FTCA is the only basis for federal jurisdiction, the courts lack subject matter jurisdiction. Such suits should be dismissed for lack of subject matter jurisdiction under 12(b)(1). *Dreier v. United States*, 106 F.3d 844, 847 (9th Cir. 1997); *Loughney v. United States*, 839 F.2d 186, 188 n.3 (3d Cir. 1988). Thus, the United States' motions for judgment on the pleadings and summary judgment are not considered.

to leave his duty station early but asserts that Richards was given such permission to permit him to go to the Education Center in Fort Knox to execute forms that would have entitled him to receive tuition assistance from the United States Army. Although Richards was allowed to leave early he was issued no pass or furlough.

Thus, the parties dispute Richards' travel intentions. Although the Court may weigh the evidence to determine whether Richards' was heading home or to the Education Center, *see International Ass'n of Machinists & Aerospace Workers v. Northwest Airlines, Inc.*, 673 F.2d 700, 711 (3d Cir. 1982), such an exercise would be unnecessary if even given the Plaintiff's view that Richards was homeward bound, jurisdiction were to fail. Therefore, the Court begins its jurisdictional analysis by taking the Plaintiff's allegations as true. The Court considers that Richards was indeed en route home to tend to his pregnant wife at the time he was killed.

## II. The Law

### 1. Feres Doctrine Jurisprudence

■ The United States, as a sovereign, is immune from suit except as it consents to be sued. *United States v. Mitchell*, 463 U.S. 206, 212, 77 L. Ed. 2d 580, 103 S. Ct. 2961 (1983). Sovereign immunity not only protects the United States from liability, it deprives the Court of subject matter jurisdiction over the claims against the United States. *Id.* In 1946, Congress enacted the FTCA which, with certain exceptions, waived sovereign immunity for common law torts committed by federal employees acting within the scope of their employment. 28 U.S.C.A. § 1346(b). However, in its seminal decision *Feres v. United States*, the Supreme Court held that military personnel are barred from suing the United States for injuries that "arise out of or are in the course of activity incident to service." 340 U.S. at 146.

■ The *Feres* doctrine has three rationales: First, the Supreme Court is cautious of "involving the judiciary in sensitive military affairs at the expense of military discipline and effectiveness." *Id.* (*quoting United States v. Shearer*, 473 U.S. 52, 59, 87 L. Ed. 2d 38, 105 S. Ct. 3039 (1985)); *see Loughney v. United States*, 839 F.2d 186, 187 (3d Cir. 1988). Second, applying state tort law which varies

depending on the situs of the incident conflicts with the uniform federal nature of the relationship between the service member and the Government. *United States v. Johnson*, 481 U.S. 681, 689, 95 L. Ed. 2d 648, 107 S. Ct. 2063 (1987); *Loughney*, 839 F.2d at 187. Finally, because service members are eligible for statutory disability and death benefits, Congress' purpose in enacting the FTCA of providing remedies is not served by extending the FTCA to service members. *Johnson*, 481 U.S. at 690.

### 2. Feres Doctrine Practice

■ To assist in determining whether the injuries occurred incident to service, courts consider the totality of the circumstances including: (1) the service member's duty status; (2) the situs of the injury; (3) and the activity the service member was performing. *See, e.g., Schoemer v. United States*, 59 F.3d 26, 28 (5th Cir. 1995); *Flowers v. United States*, 764 F.2d 759, 760-61 (11th Cir. 1985). A particular factor or combination of factors may be dispositive. For example, if a service member is injured on a military base, the *Feres* doctrine generally bars suit. *Coffey v. United States*, 324 F. Supp. 1087, 1088 (S.D. Cal. 1971) (finding that although service member held liberty card and was exiting base to off-post liberty, because accident occurred on base, situs of accident barred FTCA suit), *aff'd* 455 F.2d 1380 (9th Cir. 1972). When the totality of the circumstances show that the *Feres* doctrine bars suit, the Court may dismiss the suit without considering the underlying *Feres* doctrine rationales. *Loughney*, 839 F.2d at 188 (holding that when military status of the service member was dispositive, no case-by-case inquiry into whether claim would involve judicial intrusion into military affairs was warranted). On the other extreme, even when the three-factor totality of the circumstances test strongly indicates that the *Feres* doctrine does not bar suit, the Court must look to the *Feres* doctrine rationales before permitting suit. *See Shearer*, 473 U.S. at 54, 57. For example, in *United States v. Shearer*, although a service member was killed while off-duty, off-base, and while not performing any military related activity, because the military status of the tortfeasor could "require[] the civilian court to second-guess military decisions," the *Feres* doctrine rationale barred suit. *Id.*

## III. Case Analysis

### A. Totality of the Circumstances

The Plaintiff argues that the three factors generally considered in determining the totality of the circumstances conclusively show that Richards' death did not occur incident to service. According to the Plaintiff, Richards was in off-duty status, on a public road, and performing an act not related to his military duties — going home. Although little Third Circuit guidance is available, the Ninth Circuit in the factually similar case, *Troglia v. United States*, held that suit by an off-duty service member injured while possibly "returning to the base after enjoying a short period of liberty," on a public road passing across an easement on military property, may not be barred by the *Feres* doctrine. 602 F.2d 1334, 1339-40 (9th Cir. 1979) (remanding to district court to determine service member's status and activity at time of injury). In contrast, the Eleventh Circuit found a *Feres* bar in *Flowers v. United States*, when an off-duty service member, headed home from the grocery store was injured on a public road running through an easement on military property. 764 F.2d at 761. The lack of Third Circuit precedent together with these conflicting rulings make the law as applied to these facts unclear. Thus, the Plaintiffs argument that the three-factor incident to service test conclusively permits suit in this case is without merit.

If each of the three factors is individually analyzed, the three-factor test points more strongly toward finding a *Feres* bar than toward permitting suit. For the purposes of the *Feres* doctrine, whether an active duty service member is off-duty or on-duty generally is immaterial. *E.g., Skees v. United States*, 107 F.3d 421, 425 (6th Cir. 1997) (holding that "status as an active duty service person, not whether he was on or off-duty at the time of his death, is controlling"); *Bozeman v. United States*, 780 F.2d 198, 200 (2d Cir. 1985) (noting active duty status continues when service member on liberty or leave); *Warner v. United States*, 720 F.2d 837, 839 (5th Cir. 1983) (holding that "[o]ne with only an unexercised right to a pass or who is only off duty for the day usually is held to be acting 'incident to service.'"); *Mason v. United States*, 568 F.2d 1135, 1136 (5th Cir. 1978) (holding that although service member was off-duty and on his way home, because he was on active duty and on base,

he was "still subject to all military regulations and discipline and was readily available for emergency service or temporary duties"). *But cf. Parker v. United States*, 611 F.2d 1007, 1014 (5th Cir. 1980) (holding that right to be off-duty for four days more like furlough than mere release from day's duties). Furthermore, when an active status service member is injured in a vehicular accident on a military reservation, courts generally find a *Feres* bar.[3] *See, e.g., Shaw v. United States*, 854 F.2d 360, 363 (10th Cir. 1988); *Warner*, 720 F.2d at 839; *Coffey*, 324 F. Supp. at 1088. Finally, the activity of leaving the duty station after work and returning to the duty station for work is generally considered an activity incident to military service. *Lauer v. United States*, 968 F.2d 1428, 1430 (1st Cir. 1992) (holding that leaving base for non-military activity and returning therefrom is usually incident to service); *Shaw*, 854 F.2d at 363 (holding that fact that service member was on post and on his way to work was directly connected to military service). As in *Shaw v. United States*, in which a service member was struck by an Army cargo truck on base on his way to work, the totality of the circumstances shows that Richards, like Shaw, "would not, except in the event of the rarest coincidence, have been in the same place at the same time with the same purpose, had it not been incident to his active status in the military." 854 F.2d at 363.

The application of each of the three factors to the instant case strongly indicates that the *Feres* doctrine bars suit. However, because the two circuits that have considered factually similar cases are split and because the Third Circuit has not had occasion to review a factually similar case, the Court, in an abundance of caution, finds the three factor analysis inconclusive.

## B. Consideration of the Feres Doctrine Rationales

Because the three factor incident to service test generally applied in evaluating the totality of the circumstances does not conclusively bar suit, the Court considers the *Feres* doctrine rationales. As

---

[3] Whether an incident involving an active duty service member occurring on a public road, such as Kentucky Highway 1638, running on an easement across a military reservation, arises out of or is in the course of military activity for the purpose of a *Feres* analysis, has not been decided by the Third Circuit and the Ninth Circuit and Eleventh Circuit are split on this question. *Compare Troglia*, 602 F.2d 1334 at 1339 *with Flowers* 764 F.2d at 761.

discussed, the *Feres* doctrine is designed to prevent unnecessary judicial intrusion into military affairs and to protect the Government from responding to tort actions under varying state laws. Further justification for the *Feres* bar is the uniform compensation provided to service members under federal law. These rationales, considered in turn, show that the *Feres* doctrine bars this suit.

### 1. Judicial Intrusion into Military Affairs

What constitutes judicial intrusion into military affairs has been broadly construed. Some courts have held that a collision that merely involves military eyewitnesses and military physicians, without any further questioning of military decision-making, sufficiently involves the judiciary intruding on military affairs to warrant barring suit under the Feres doctrine. For example, in Shaw, despite acknowledging that "the present case may not involve a 'decision of command,'" the court held that concern for judicial intrusion into military affairs supported barring suit because "this case may require military personnel, . . . military eyewitnesses to the accident, and military medical personnel who treated Mr. Shaw and diagnosed the extent of his injuries 'to testify in court as to each other's decisions and actions.'" 854 F.2d at 365 (*quoting Shearer*, 473 U.S. 52 at 58.); *see also Stewart v. United States*, 90 F.3d 102, 106 (4th Cir. 1996) (holding that *Feres* doctrine rationale supported barring suit involving collision because military personnel could be required to testify).

Other courts have applied the *Feres* doctrine more narrowly, considering whether the claims were of the type that would involve the courts in questioning a traditional military function. For example, in *Taber v. Maine*, because the plaintiff only alleged the negligence of the drunk driver and no claims of negligent supervision by military personnel were made, the Second Circuit held that military discipline was not implicated. 67 F.3d 1029, 1052 (2d Cir. 1995). Similarly in *Dreier*, the Ninth Circuit found no *Feres* doctrine bar because the case did not involve potential interference with decision-making of a traditional military nature:

> This case makes no allegations of inadequate military supervision or training, but rather alleges the same type of negligence that could be alleged against a completely private [facility]. . . . This circuit has not been so con-

cerned in questioning aspects of the operation of a military base that are not related to traditional military functions.

106 F.3d 844 at 854 & n.9.

The case at bar involves intrusion of the judiciary into military discipline even if this second more stringent test is applied. In her complaint, the Plaintiff claims *inter alia*:

Defendant United States through its negligence failed to properly maintain its vehicle, United States Army Truck . . . involved in the vehicular accident which gives rise to this Complaint

. . .

Defendant United States negligently allowed [service member] to operate a five-ton truck knowing that he was not licensed to drive [such] truck . . . . Defendant negligently ordered [service member] to drive the truck knowing that he did not possess the requisite skill or experience to safely operate the vehicle.

Some of the allegations in this case are similar to those in *Sanchez v. United States*, 878 F.2d 633 (2d Cir. 1995). In *Sanchez*, the plaintiff alleged that his injuries were caused by the negligent servicing of a car by a service station owned and operated by the government. *Sanchez*, 878 F.2d at 634. Even though the injuries occurred while Sanchez was off-duty and off base, the *Feres* doctrine was found to apply because "establishment of Sanchez's claim would require Marine Corps officers to testify about their policies in hiring employees for the repair station and in running the station." *Id.* at 638.

 In this case, military officials would be questioned not only with respect to their maintenance policies, but also with respect to decisions regarding personnel supervision and discipline as in *Shearer*. Thus, this suit is barred under the FTCA because the Plaintiff's allegations are "the *type* of claims that, if generally permitted, would involve the judiciary in sensitive military affairs

at the expense of military discipline and effectiveness." *See Shearer*, 473 U.S. at 59 (emphasis in original).

## 2. Federal Relationship and Uniform Compensation

■ The remaining *Feres* doctrine rationales also favor a *Feres* bar. Richards had a distinctively federal relationship to the government and the service member allegedly responsible for his death; his active duty status in the armed forces and the fact that the incident occurred while he was on his way home from his work on base suggest this federal relationship. In light of this federal relationship, the *Feres* doctrine prevents the United States from having to respond to a tort action based fortuitously on the tort law of Kentucky, the state in which Richards was killed.

Instead, the United States has provided "simple, certain, and uniform compensation" to Richards' family in the form of extensive benefits. *Feres*, 340 U.S. 135 at 144, 95 L. Ed. 152, 71 S. Ct. 153. Richards' widow received $ 150,000 from Servicemen's Group Life Insurance and $ 6,000 in a death gratuity from the United States. She and her children receive over $ 1,200 per month in dependency and indemnity compensation. In addition Richards' family is entitle to numerous other survivor benefits, including education stipends, medical care, federal civil service hiring preferences, and home loan guarantees.

Thus, all three *Feres* doctrine rationales support a finding that the Plaintiff's suit is barred by the *Feres* doctrine.

## IV. Conclusion

Courts have recognized that

in recent years the [Supreme] Court has embarked on a course dedicated to broadening the *Feres* doctrine to encompass, at a minimum, *all* injuries suffered by military personnel that are even remotely related to the individual's *status* as a member of the military, without regard to the location of the event, the status (military or civilian) of the tortfeasor, or any nexus between the injury-producing even and the essential defense/combat purpose of the military activity from which it arose.

390

*Major v. United States*, 835 F.2d 641, 644 (6th Cir. 1987) (emphasis in original); *see Stewart*, 90 F.3d at 105; *Shaw*, 854 F.2d at 364. The *Feres* doctrine has been expanded such that "practically any suit that implicates the military judgments and decisions runs the risk of colliding with *Feres*." *Jackson*, 110 F.3d 1484 at 1487 (citations omitted).

In this case, the service member's status, the location of the cause of the injury and the military nature of the service member's activity at the time of the incident, strongly indicate that the *Feres* doctrine bars suit. However, because other circuits examining similar facts are split and the Third Circuit has not yet reviewed such a case, these facts are found non-dispositive. Therefore, the *Feres* doctrine rationales are considered. Because the Plaintiff's allegations would require the judiciary to involve itself in questions of military discipline and decision-making, and the other *Feres* doctrine rationales also support a finding of immunity, this suit is barred under the *Feres* doctrine. Since the underlying cause of action is barred by the *Feres* doctrine, the Plaintiff's derivative actions are similarly barred. *Mondelli v. United States*, 711 F.2d 567, 569 (3d Cir. 1984).

An appropriate order accompanies this Memorandum Opinion.

Dated: March 27, 1998.

## ORDER

This matter comes before the Court on the United States' Motion for Dismissal and/or for Judgment on the Pleadings and/or for Summary Judgment. After a hearing on this motion, for the reasons stated in the accompanying Memorandum Opinion, it is hereby ORDERED that Dismissal is GRANTED and that Judgment on the Pleadings and Summary Judgment are DENIED as moot.

Dated: March 27, 1998.