John J. **RUGGIERO** and Carol A. **Ruggiero, individual and on behalf of the Estate of John Paul Vito Ruggiero, Plaintiffs,**

v.

**UNITED STATES of America and the Department of the Navy, Defendants.**

No. CIV.A.3:04–CV–500.

United States District Court, M.D. Pennsylvania.

Jan. 20, 2005.

David Paul Tomaszewski, Kimberly D. Borland, Borland and Borland, L.L.P., Wilkes–Barre, PA, for Plaintiffs.

Mark E. Morrison, Stephen R. Cerutti, II, Office of the United States Attorney, Harrisburg, PA, for Defendants.

### MEMORANDUM

CAPUTO, District Judge.

Before me is Defendants' Motion to Dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction. (Doc. 7.) Resolution of this motion turns on whether the so-called *Feres* doctrine, *Feres v. United States,* 340

U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), bars recovery under the Federal Tort Claims Act ("FTCA"), 5 U.S.C. § 8101, *et seq.* Despite the harsh result given this grave tragedy, I am constrained by *stare decisis* to hold that the *Feres* doctrine applies and deprives the Court of jurisdiction. Accordingly, Defendants' Motion to Dismiss will be granted.

## BACKGROUND

Midshipman Second Class John Paul Vito Ruggiero accidentally fell to his death from the window in his room in Bancroft Hall at the United States Naval Academy in Annapolis, Maryland on August 18, 2002. There was no screen on the window in his room despite Midshipman Ruggiero and his two roommates listing the screen as missing on a Bancroft Hall Berthing Check–In Sheet on August 16, 2002. Moreover, it was known to the Navy that midshipmen used the window sills as a step to climb into their beds. The Navy also knew that midshipmen used the sills to hang laundry on to dry. Despite an ensuing investigation by the Naval Criminal Investigative Service it remains unclear as to exactly how Midshipman Ruggiero fell from the window in his room in Bancroft Hall.

Because the United States moved to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure and because the Complaint did not reveal much detail on Midshipman Ruggiero's duty status and activity at the time of his fall, the Court ordered an evidentiary hearing to determine whether facts on these issues could be developed to the point of clarification.

The Complaint, coupled with the evidence at the hearing, establish the following: Midshipman Ruggiero returned to Bancroft Hall before taps. He appeared to some of his fellow midshipmen to be intoxicated, and those midshipmen gave affidavits to the effect that he was "walk-ing it off." Midshipman Ruggiero left the hallway in Bancroft Hall at approximately 1:25 a.m. and said he was going to bed. Despite testimony that a midshipman could sign out after 1:00 a.m. to go anywhere in Bancroft Hall, it also appears that a midshipman who signs out after 1:00 a.m. can go anywhere on the grounds of the Naval Academy.

## STANDARD OF REVIEW

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for dismissal of an action where the court lacks jurisdiction over the subject matter of that action. FED. R. Civ. P. 12(b)(1). A defendant may challenge the existence of subject matter jurisdiction in one of two ways. *See Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir.1977). A defendant may assert a "facial challenge to jurisdiction, asserting that plaintiffs' complaint, on its face does not allege sufficient [grounds] to warrant the [C]ourt in taking jurisdiction." *Cardio–Med. Assoc., Ltd. v. Crozer–Chester Med. Ctr.,* 721 F.2d 68, 75 (3d Cir.1983). When assessing a facial challenge, the Court must assume that "the allegations contained in the complaint are true." *Mortensen,* 549 F.2d at 891.

In the alternative, a defendant may assert a factual attack on the jurisdictional allegations in the complaint. *Gould Elecs., Inc. v. United States,* 220 F.3d 169, 176 (3d Cir.2000). Where a defendant utilizes this method, no presumption of truthfulness attaches to the allegations in the complaint. *Carpet Group Int'l v. Oriental Rug Imps. Ass'n,* 227 F.3d 62, 69 (3d Cir.2000) (quoting *Mortensen,* 549 F.2d at 891). Moreover, the Court is not bound to the four corners of the complaint when determining whether it possesses the power to hear the case. *See Gotha v. United States,* 115 F.3d 176, 178–79 (3d Cir.1997) (citing *Mortensen,* 549 F.2d at 891). Rather, the Court is permitted to weigh the

available evidence to determine whether subject matter jurisdiction exists. *Mortensen*, 549 F.2d at 891. In doing so, the Court must "satisfy itself as to the existence of its power to hear the case." *Id.* Even when the merits of the claim and jurisdiction are closely related, the Court may determine jurisdiction without deciding the merits provided it "demands less in the way of jurisdictional proof than would be appropriate at a trial stage." *Gould*, 220 F.3d at 178 (quoting *Mortensen*, 549 F.2d at 891). Furthermore, the existence of disputed material facts will not preclude the Court from evaluating the jurisdictional allegations set forth in the complaint. *Id.*

 It is well established that in a factual attack, the burden to establish the existence of subject matter jurisdiction rests squarely on the plaintiff's shoulders. *Packard v. Provident Nat'l Bank*, 994 F.2d 1039, 1045 (3d Cir.1993) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936)). Prior to dismissal of the action for lack of subject matter jurisdiction, the party asserting jurisdiction must have an opportunity to present evidence in support of his jurisdictional contention. *Local 336, Am. Fed'n of Musicians, AFL–CIO v. Bonatz*, 475 F.2d 433, 437 (3d Cir.1973).

In the instant matter, Defendant has asserted a factual attack on the jurisdictional allegations set forth in Plaintiff's Complaint. Consequently, the Court need not presume the truthfulness of the allegations set forth therein. Moreover, it is proper for the Court to consider all relevant evidence submitted by the parties.

## DISCUSSION

 Defendants argue that the *Feres* doctrine deprives the Court of jurisdiction over this matter. Plaintiffs contend that the *Feres* doctrine should not apply because the death of Midshipman Ruggiero was not incident to service. Plaintiffs argue that the underlying rationale for the *Feres* exception to the FTCA, *i.e.*, the effect on good order and discipline, is simply not implicated here. Moreover, Plaintiffs argue that the Court should permit this matter to proceed so as to ensure that the Navy is held accountable for its alleged failure to provide safe housing to its service members. In support of this argument, Plaintiffs urge the application of *Elliott v. United States*, 37 F.3d 617 (11th Cir.1994).

In *Feres*, the United States Supreme Court held that the United States was not liable under the FTCA for injuries to service personnel arising out of or in the course of activity incident to service. *Feres*, 71 S.Ct. at 159. The Supreme Court in the later case of *United States v. Shearer* noted as follows:

> [i]n the last analysis, *Feres* seems best explained by the peculiar and special relationship of the soldier to his superiors, the effects of the maintenance of such suits on discipline, and the extreme results that might obtain if suits under the Tort Claims Act were allowed for negligent orders given or negligent acts committed in the course of military duty.

473 U.S. 52, 57, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985) (internal quotations and citations omitted). Thus, at its most rudimentary level, the *Feres* doctrine stands for the proposition that it is undesirable to have civilian courts "second quess[ing] military decisions." *Id.* However, the *Shearer* Court also cautioned that *Feres* "cannot be reduced to a few bright-line rules; each case must be examined in light of the statute as it has been construed in *Feres* and subsequent cases." *Id.*

In *Richards v. United States*, the United States Court of Appeals for the Third Circuit applied the *Feres* doctrine and affirmed the dismissal of an action brought by the widow of a member of the United

States Army. 176 F.3d 652 (1999). There, the plaintiff's husband, a private in the United States Army stationed at the Fort Knox Army Base, had been killed when his vehicle was broadsided by a five ton military fuel truck. *Id.* at 654. The accident occurred while the decedent was traveling on a highway within the confines of the Fort Knox Army Base. *Id.* The highway, while located within Fort Knox, was a public roadway maintained and patrolled by the State of Kentucky, which ran over an easement of land granted to the State of Kentucky by the United States Army. *Id.* In affirming the district court's dismissal of the widow's action against the United States, the *Richards* Court highlighted factors which courts must consider when determinating the applicability of the *Feres* doctrine: (1) the service member's duty status; (2) the site of the accident; and (3) the nature of the service member's activity at the time of injury. *Id.* at 655. The *Richards* Court further counseled that courts must consider each of these factors in light of the totality of the circumstances. *Id.* Moreover, the fact that any one of these factors weighs heavily in favor of applying the *Feres* doctrine should not necessarily be dispositive. *Id.*

In applying these factors to the case before it, the *Richards* Court found that the decedent's duty status and the situs of the accident weighed heavily in favor of applying the *Feres* doctrine as the decedent was an active member of the United States Army and the accident occurred within the confines of Fort Knox. 176 F.3d at 655–56. In addition, the *Richards* Court found that the nature of the decedents activity at the time of the accident further supported application of the *Feres* doctrine. The *Richards* Court affirmed the conclusion of the district court that the decedent " 'would not, except in the event of the rarest coincidence, have been in the same place at the same time with the same purpose, had it not been incident to his active status in the military.' " *Id.* at 656 (quoting *Richards v. United States*, 1 F.Supp.2d 498, (D.Vi.1998)).

As noted above, Plaintiffs strongly urge the Court to abandon *Richards* and follow the holding of the United States Court of Appeals for the Eleventh Circuit in *Elliott v. United States*, 13 F.3d 1555 (11th Cir. 1994). In *Elliott,* the Eleventh Circuit permitted an FTCA claim for injuries occurring on a military base. *Id.* at 1563. In *Elliott,* a serviceman at Fort Benning, Georgia was overcome with carbon monoxide in his on-base apartment. *Id.* at 1556. The accident was caused by a faulty ventilation system in the apartment. *Id.* The serviceman suffered serious and debilitating injuries from inhaling the carbon monoxide. *Id.* The court based its decision on the notion that "providing and maintaining single-family housing for military personnel does not involve the federal judiciary in sensitive military affairs or the second guessing of military orders." *Id.* at 1560. "To the contrary ... legal actions forcing compliance with regulations may be the only means to guarantee that the Army follows its own regulations regarding the provision of safe housing." *Id.* Given the missing screen some fifty-three feet above the ground and knowing what the Navy knew about how window sills were used by midshipmen to climb into bed, *Elliott* offers a basis to allow the suit under the FTCA. There is indeed no need to second guess a military decision; rather, such would allow the enforcement of the Navy's own regulations concerning safe housing. However, the Third Circuit Court of Appeals decided *Richards* after *Elliott,* and thus, with the benefit of the reasoning set forth therein.[1] Consequent-

---

1. Notably, *Richards* also followed then Chief Judge Becker's statement in *O'Neill v. United States*, 140 F.3d 564 (3d Cir.1998) (Becker, J.,

ly, I am constrained by the doctrine of *stare decisis* to follow the Third Circuit Court of Appeals' holding in *Richards.*

In applying the factors delineated in *Richards,* the *Feres* doctrine bars recovery in the instant matter. As in *Richards,* Midshipman Ruggiero's duty status and the location of the accident clearly weigh heavily in favor of applying the *Feres* doctrine. Moreover, the nature of Midshipman Ruggiero's activity at the time of the accident also weighs in favor of applying the *Feres* doctrine, albeit to a much lesser degree than the preceding factors. The accident resulting in Midshipman Ruggiero's death occurred at the United States Naval Academy located in Annapolis, Maryland. Moreover, although cadets and midshipmen enrolled at the various United States Service Academies are not on active duty, *Tobin v. United States,* 170 F.Supp.2d 472, 478 n. 2 (D.N.J.2001), courts have nevertheless consistently held they are subject to the *Feres* doctrine's bar, *see, e.g., Miller v. United States,* 42 F.3d 297, 307 (5th Cir.1995) (United States Naval Academy midshipman); *Collins v. United States,* 642 F.2d 217, 220–21 (7th Cir.1981) (United States Air Force Academy cadet); *Archer v. United States,* 217 F.2d 548, 551 (9th Cir.1954) (United States Military Academy cadet); *Tobin,* 170 F.Supp.2d at 472 (United States Military Academy cadet); *Galligan v. City of Philadelphia,* 156 F.Supp.2d 467, 473 (E.D.Pa. 2001) (United States Military Academy cadet). Finally, the nature of Midshipman Ruggiero's activity at the time of the accident also tends to weigh in favor of applying the *Feres* doctrine. At the time of the accident, Midshipman Ruggiero was in the living quarters provided to him by the Navy due to his enrollment in the United States Naval Academy. Moreover, he was in those same quarters because Naval Academy regulations required Midshipman Ruggiero to return to his living quarters by 1:00 a.m. taps. Although evidence was presented that midshipmen could in fact leave their quarters after 1:00 a.m., it does not change the fact that Midshipman Ruggiero's relationship with the United States Naval Academy is the only reason he was at that locale at the time of the accident. Thus, just as in *Richards,* the totality of the circumstances indicate that Midshipman Ruggiero would not have fallen from his window in Bancroft Hall had it not been incident to his status as a midshipman at the United States Naval Academy. Consequently, the Court will grant Defendants' Motion to Dismiss.

An appropriate Order shall follow.

### ORDER

**NOW,** this 20th day of January, 2005, **IT IS HEREBY ORDERED THAT:**

(1) Defendant's Motion To Dismiss (Doc. 7) is **GRANTED.**

(2) The Clerk of the Court shall mark this case **CLOSED.**

---

dissenting from denial of petition for rehearing). There the Third Circuit Court of Appeals denied rehearing in a case where the service member was murdered by her ex-boyfriend while watching television in her on-base apartment. Judge Becker disagreed, noting there is nothing "less incident to service than being attacked by an ex-lover while sitting at home watching a movie with a friend." *Id.* at

564. Judge Becker went on to suggest that the harshness of *Feres* needed to be re-examined. *Id.* at 566. Indeed, he noted that Justice Scalia, joined by three other Justices, has stated that *Feres* was wrongly decided and warrants all the criticism it receives. *Id.* (discussing *U.S. v. Johnson,* 481 U.S. 681, 700, 107 S.Ct. 2063, 95 L.Ed.2d 648 (1987)).