Peter P. TROGLIA, Jr., Plaintiff-Appellant,

v.

UNITED STATES of America, Defendant-Appellee.

No. 77-1342.

United States Court of Appeals, Ninth Circuit.

Aug. 24, 1979.

David A. Offutt, Marysville, Cal., for plaintiff-appellant.

Dwayne Keyes, Sacramento, Cal., Louis J. Bizzarri, Sacramento, Cal., for defendant-appellee.

Before MOORE *, SNEED and KENNEDY, Circuit Judges.

MOORE, Circuit Judge:

Peter P. Troglia, Jr. appeals from a judgment of the United States District Court for the Eastern District of California (Honorable Philip C. Wilkins, District Judge), entered December 2, 1976, granting a motion for summary judgment in favor of the defendant United States of America. Troglia had filed a complaint seeking damages under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–2680 (1976) (hereinafter "FTCA" or "the Act"), for personal injuries suffered in an automobile accident. The United States based its motion for summary judgment on the argument that *Feres v. United States,* 340 U.S. ·135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), barred any recovery under the FTCA.

The salient facts alleged are that plaintiff, an Air Force Technical Sergeant assigned to Beale Air Force Base, California, on December 13, 1973 was driving his car on Vassar Lake Road, Yuba County, California, where his car was struck head on by a motor vehicle driven on the wrong side of the road by Karl Beck; that Beck was intoxicated as a result of having been sold intoxicating beverages at the Base's NCO Club by its employees when they knew or should have known Beck was intoxicated; that the NCO Club was under the control, operation, and management of the Army and Air Force Exchange Service, an agency of the United States Government; and that Troglia was seriously injured. By way of answer, the Government alleged that Troglia was on active duty; that the accident occurred within the geographical and jurisdictional limits of the Base; that Troglia was subject to all military regulations, orders, and disciplinary action under the Uniform Code of Military Justice; and that the action was barred by the doctrine of *Feres.*

At oral argument, both parties seemed to agree that the accident occurred on property owned by the United States, adjacent to the confines of Beale Air Force Base. However, the accident took place approximately one-half mile outside the gate guarding access to the base itself. The United States had granted an easement for the road to Yuba County. Vassar Lake Road, including the site of the accident, was maintained by Yuba County and was patrolled by the Yuba County Sheriff's Office.

The tort for which the Government is alleged to be responsible must be that of its NCO Club employee agents who continued to serve drinks to an intoxicated person. Under California law, a tavern operator or his employee may be liable to a person injured by a patron of the tavern whose intoxication caused the injury if the tavern operator's conduct in serving liquor to the patron is a proximate cause of the injury. *Vesely v. Sager,* 5 Cal.3d 153, 95 Cal.Rptr. 623, 486 P.2d 151 (1971). If Troglia's allegations are true, the United States would seem to be liable to him under California substantive law and the FTCA, 28 U.S.C. §§ 1346(b), 2671–2680 (1976), unless Troglia's status as a member of the United States Armed Forces bars his recovery pursuant to the rule of *Feres v. United States, supra.* It thus becomes necessary to consider *Feres* and the related cases and analyze the effect of the so-called *Feres* rule on this case.

By enacting the FTCA the Congress was willing to relinquish the sovereignty rights of the United States against suit to the extent specified therein. Section 1346(b)

---

* Leonard P. Moore, Senior Circuit Court Judge of the Second Circuit, sitting by designation.

gives the district courts jurisdiction over claims against the United States for "personal injury" caused by the negligent act "of any employee of the Government while acting in the scope of his employment under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the laws of the place where the act or omission occurred".[1]

Apparently, the first time the question of a serviceman's[2] standing under the FTCA reached the Supreme Court was in 1949 in which year that Court accepted on certiorari a case from the Fourth Circuit, *United States v. Brooks*, 169 F.2d 840 (4th Cir. 1949), wherein two servicemen and their father, a civilian, had been injured, one serviceman fatally, in a collision with a military vehicle on a public highway. Both soldiers had been on leave or furlough at the time. Recovery had been allowed under the FTCA, but was overturned by the Court of Appeals, Chief Judge Parker writing a long dissent. Even then the question of the applicability of the FTCA to servicemen was in doubt, Judge Dobie, writing for the majority, said:

> "This problem of statutory interpretation is close and difficult, due primarily to the inept draftsmanship on the part of Congress in failing to make clear and express provision as to soldiers in the United States Army." *United States v. Brooks*, 169 F.2d at 842.

In his strong dissent, Judge Parker said "Legislation is a matter for Congress, not for the court: and the language used by Congress clearly covers soldiers as well as civilians." (*Id.* at 847).

The Supreme Court, granting certiorari, said: "We brought the case here on certiorari because of its importance as an interpretation of the Act". *Brooks v. United States*, 337 U.S. 49, 50, 69 S.Ct. 918, 919, 93 L.Ed. 1200 (1950).

The "importance" of the case arises from the discussion of the statute's applicability to servicemen wherein the Court said:

> "The statute's terms are clear. They provide for District Court jurisdiction over *any* claim founded on negligence brought against the United States. We are not persuaded that 'any claim' means 'any claim but that of servicemen'. . . . Without resorting to an automatic maxim of construction, such exceptions make it clear to us that Congress knew what it was about when it used the term 'any claim'. It would be absurd to believe that Congress did not have the servicemen in mind in 1946, when this statute was passed." 337 U.S. at 51, 69 S.Ct. at 919 (emphasis in original).

In holding that the Government could be liable to the Brookses under the FTCA, the Court explained:

> "The Government envisages dire consequences should we reverse the judgment. A battle commander's poor judgment, an army surgeon's slip of hand, a defective jeep which causes injury, all would ground tort actions against the United States. But we are dealing with an accident which had nothing to do with the Brooks' army careers, injuries not caused by their service except in the sense that all human events depend upon what has already transpired. Were the accident incident to the Brooks' service, a wholly different case would be presented." 337 U.S. at 52, 69 S.Ct. at 920 (footnote omitted).

1. 28 U.S.C. § 1346(b) reads as follows:

   "(b) Subject to the provisions of chapter 171 of this title, the district courts, together with the United States District Court for the District of the Canal Zone and the District Court of the Virgin Islands, shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

2. Our use of the term "serviceman" is merely for brevity's sake. We are fully aware that there are now many "servicewomen" serving this country in the Armed Forces.

The Court also held that the existence of compensatory payments to injured servicemen and their survivors provided by other statutes did not indicate Congressional purpose to forbid tort actions under the FTCA. The various statutes involved say nothing about the exclusiveness of the remedies provided and do not require an election between remedies. However, payments received by the plaintiff under other laws may be deducted from his or her recovery under the FTCA.

The following year in *Feres v. United States, supra*, the Supreme Court considered three different factual situations. In one case, the decedent Feres was on active duty in the Army when he died as a result of a fire in his barracks. In the other two cases, the injuries had been inflicted on servicemen by military physicians. With respect to all three cases, the Court held that "the Government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service". 340 U.S. at 146, 71 S.Ct. at 159. Thus, although it was no part of the FTCA as congressionally enacted, the Supreme Court in *Feres* injected into the statute a governmental exemption from liability if the injury was to "servicemen" and was incurred "in the course of activity incident to service". Since the Court had just held in *Brooks* that servicemen as such were not excluded, the thrust of exclusion would appear to be in the words "activity incident to service".

In 1954, *Brown v. United States*, 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed. 139 (1954), was decided, creating a trilogy of leading cases the import of which has proved to be far from clear. Brown was a discharged veteran who entered a Veterans Administration hospital for treatment of a knee injury which had been incurred while Brown was on active duty. Negligent treatment by persons at the hospital caused serious and permanent injury to the nerves in Brown's leg. The Supreme Court upheld his FTCA claim, holding that *Brooks* rather than *Feres* controlled because "the negligent act giving rise to the injury in the present case was not incident to the military service. . . ." 348 U.S. at 113, 75 S.Ct. at 144. The *Brown* decision made it clear that *Brooks* was still good law and that *Brooks* and *Feres* must be read together. Furthermore, the fact that Brown had received a compensation award under another statute did not bar a suit under the FTCA; its effect would have been merely to reduce the amount of the FTCA recovery. 348 U.S. at 113, 75 S.Ct. at 143.[3]

■ Since the three cases were decided, the Courts of Appeals have played a role in modifying the shape of the *Brooks-Feres-Brown* framework. It would appear to be fairly well established that if a serviceman is injured while *on-base*, he cannot recover under the FTCA, whatever the cause of the injury. For example, recovery was barred in the following cases: *Chambers v. United States*, 357 F.2d 224 (8th Cir. 1966) (serviceman drowned while swimming for recreation in base pool);[4] *Zoula v. United States*, 217 F.2d 81 (5th Cir. 1955) (two students on tour of military duty injured by automobile collision with Army ambulance as they were preparing to leave base); and *Coffey v. United States*, 324 F.Supp. 1087 (S.D.Cal. 1971), *aff'd per curiam*, 445 F.2d 1380 (9th Cir. 1972) (Marine, a passenger in automobile, injured in a collision with a private railroad switch engine within confines of military reservation; negligence alleged was failure properly to mark the railroad crossing).

The contrast between on-base and off-base injuries manifests itself most starkly in the cases involving crashes of military

---

**3.** The most recent discussion by the Supreme Court of the *Feres* doctrine can be found in *Stencel Aero Engineering Corp. v. United States*, 431 U.S. 666, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1977). *Stencel* offers little help in deciding this case because the factual situation is so different from the facts alleged here.

**4.** We note that one may question whether recreational swimming is a military pastime incident to service.

aircraft on dwellings. If the plane falls on a serviceman's home located on-base, he cannot recover for the Government's negligence. *Orken v. United States,* 239 F.2d 850 (6th Cir. 1956); *Preferred Insurance Co. v. United States,* 222 F.2d 942 (9th Cir.), *cert. denied,* 350 U.S. 837, 76 S.Ct. 74, 100 L.Ed. 747 (1955). But if by chance the plane should hit a serviceman's off-base home, he may recover. *Sapp v. United States,* 153 F.Supp. 496 (W.D.La.1957); *Snyder v. United States,* 118 F.Supp. 585 (D.Md.1953), *modified on other grounds* in *United States v. Guyer,* 218 F.2d 266 (4th Cir. 1954), *district court judgment reinstated,* 350 U.S. 906, 76 S.Ct. 191, 100 L.Ed. 796 (1955). In these cases, the on-base/off-base distinction has, in part, become a substitute for analysis of whether the serviceman was injured in an activity incident to his service in the military. Nevertheless, the "incident to service" test appears to remain the authoritative touchstone for deciding whether the Government is liable. *Callaway v. Garber,* 289 F.2d 171 (9th Cir.), *cert. denied,* 368 U.S. 874, 82 S.Ct. 120, 7 L.Ed.2d 76 (1961); *United States v. Lee,* 400 F.2d 558 (9th Cir. 1968), *cert. denied,* 393 U.S. 1054, 89 S.Ct. 691, 21 L.Ed.2d 695 (1969).

The *Feres* rule has attracted more than its share of confusion in subsequent judicial opinions. Some decisions reflect an overly abstract view of what the *Feres* decision stands for. For example, in *Archer v. United States,* 217 F.2d 548 (9th Cir. 1954), *cert. denied,* 348 U.S. 953, 75 S.Ct. 441, 99 L.Ed. 745 (1955), a panel of this court, in a case involving the death of a West Point cadet being transported in an Army plane, said: "The Tort Claims Act does not cover such a situation". Despite *Brooks* it quoted from *Feres* the sentence: "No federal law recognizes a recovery such as claimants seek". 217 F.2d at 552. The court then stated that "the locality of the action claimed to have caused damage is an indispensable allegation under the [FTCA]", but went on to conclude that the absence of the "indispensable allegation" was of "no importance" because the *Feres* case barred recovery in any event. The court's conclusion disregarded the *Brooks* holding that a service-

man could recover according to the law of the locality and affirmed dismissal of the complaint.

In *Lee v. United States,* 261 F.Supp. 252 (C.D.Cal.1966), *rev'd,* 400 F.2d 558 (9th Cir. 1968), *cert. denied,* 393 U.S. 1053, 89 S.Ct. 691, 21 L.Ed.2d 695 (1969), this court has made an attempt to dispel the murk gradually enshrouding *Feres.* The district judge had come to the seemingly logical conclusion that exclusion from the FTCA should not depend on whether the injured person was on active duty or furlough but "would depend upon whether or not the injuries stemmed from activities that involved an official military relationship between the negligent person and the claimant". If so, the claimant would be precluded; otherwise, he would not. 261 F.Supp. at 256. Lee had alleged that the negligence of employees of the Federal Aviation Administration had caused the plane in which he was riding to crash. Therefore, no military relationship existed. The district judge was much concerned, as Mr. Justice Murphy had been in *Brooks,* that the exclusion of a serviceman's claim would change the statute to read "any claim but that of servicemen". 261 F.Supp. at 254. *See also Brooks v. United States, supra,* 337 U.S. at 51, 69 S.Ct. 918, 93 L.Ed. 1200. The Government's motion to dismiss was denied.

In reversing the lower court's decision, this court rejected the suggestion that the *Feres* rule had been negated. *United States v. Lee,* 400 F.2d 558, 562 (9th Cir. 1968), *cert. denied,* 393 U.S. 1053, 89 S.Ct. 691, 21 L.Ed.2d 695 (1969). The Court found from its discerning analysis that "[T]he circuit courts have consistently followed the rule stated in *Feres* 'that the government is not liable under the Federal Tort Claims Act for injuries to servicemen when the injuries arise out of, or are in the course of activity incident to service.'" 400 F.2d at 561. The opinion also pointed out that Congress had not amended the Act to alter the rule created in *Feres*; it still has not been amended. The court held that the status of the plaintiff rather than the status of the tortfeasor, or the nature of their

relationship, controls the application of the *Feres* rule.

Many cases were cited for the proposition that "where Congress has provided a form of administrative compensation for government employees injured in the performance of their duties, the availability of such a remedy precludes recourse to a tort suit against the government". 400 F.2d at 563. The court, however, went on to recognize that:

> "[Brown] sets forth reasons why servicemen injured outside the 'course of military duty' are exempt from the general rule that where compensation has been provided, Tort Claim suits may not be maintained."

The *Lee* court was left with the uncertain test of whether the injury was "incident to service" or in the "course of military duty" without benefit of a policy reason for coming down on one side or the other. The court also discounted the usefulness of the argument, as put forward in *United States v. Brown, supra*, 348 U.S. at 112, 75 S.Ct. 141, 99 L.Ed. 139, that the *Feres* rule was designed to protect military discipline because the argument did not fully explain the result in *Feres* and was found to have nothing to do with the result in *Callaway v. Garber*, 289 F.2d 171, 173–174 (9th Cir.), *cert. denied*, 368 U.S. 874, 82 S.Ct. 120, 7 L.Ed.2d 76 (1961). 400 F.2d at 564.

In light of the difficulties the *Lee* court had, we begin our attempt to apply the precedents to this case with some trepidation.

■ The parties have disputed with substantial vigor the question whether Troglia is barred from recovering because the accident occurred where it did. Troglia was injured outside the gates to Beale Air Force Base but on Government-owned land adjacent to the base. Had the accident occurred inside the base itself, this might be a different case. However, the connection between mere Government ownership of land near a base and Troglia's military service is so weak, that the accident's location should not be a controlling factor. In other words, the fact that a member of the military is injured in an automobile accident on Government-owned property near a military installation does not obviate further inquiry into the extent of the connection between the plaintiff's activities and his military service. This view is further supported by the fact that Yuba County, not the United States, maintained and patrolled the stretch of road on which the accident occurred. The Government was not responsible for the safety of this location nor was a defect in the road the cause of the injury. The Government's assertion that the injury occurred within the "jurisdictional" boundaries of the base has no legal effect, given the facts of this case.

The Government argues that Troglia was on active duty and not on leave or furlough at the time of the accident. Therefore, the Government continues, Troglia must have been engaged in activity incident to military service. The fact that Troglia was on active duty merely proved that he was not an inactive reservist or a discharged veteran. Whether Troglia was travelling pursuant to military orders or was performing any military duty at the time he was injured is not known; thus, the Government cannot rely on *Callaway v. Garber*, 289 F.2d 171 (9th Cir.), *cert. denied*, 368 U.S. 874, 82 S.Ct. 120, 7 L.Ed.2d 76 (1961) (off-base, off-duty injury incurred during travel; recovery denied because soldiers were required to travel in order to comply with their orders). It is entirely possible that Troglia was returning to the base after enjoying a short period of liberty. His precise status does not appear from the record.

*Mills v. Tucker*, 499 F.2d 866 (9th Cir. 1974), is the most factually similar of the relevant cases in this jurisdiction. In *Mills* a Navy petty officer was killed while riding his motorcycle on a road which ran alongside the fence surrounding a naval ammunition depot. Privately-owned farmland bordered the road along the opposite side. The road was maintained by the Navy and connected two civilian areas outside the depot. Mills was returning to his Navy-owned quarters for his son's birthday party after "moonlighting", under a furlough, in a civil-

ian job as a fry cook. This Court permitted his estate to recover for the Navy's negligent maintenance of the road because Mills was "only in the remotest sense subject to military discipline". 499 F.2d at 867.

The *Mills* court characterized the case as follows:

"Though the *Feres* doctrine has been the source of much confusion, this case presents no such difficulties. The Government, although sued by a serviceman, is not immune where the 'injuries [are] not caused by [the plaintiff's] service except in the sense that all human events depend upon what has already transpired.' *Brooks v. United States*, 337 U.S. 49, 52, 69 S.Ct. 918, 920, 93 L.Ed. 1200 (1949); *accord, United States v. Brown*, 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed. 139 (1954). In the words of the *Feres* Court, there is no immunity where the injury does not arise out of a course of activity incident to service." 499 F.2d at 867 (footnote omitted).

The panel went on to state conclusively:

"This case, thus controlled by *Brooks*, falls on the other side of the line of *Henninger v. United States*, 473 F.2d 814, 816 (9th Cir.), cert. denied, 414 U.S. 819, 94 S.Ct. 43, 38 L.Ed.2d 51 (1973). The *Feres* doctrine does not apply."

The instant case, however, is dependent upon such determinative facts as may be developed in deciding whether it is controlled by *Brooks* rather than *Feres*. Such facts may be all-important.

In addition, *Knecht v. United States*, 144 F.Supp. 786 (E.D.Pa.1956), aff'd 242 F.2d 929 (3d Cir. 1957), is worthy of note. Knecht was killed while returning to his military post of duty when the car he was riding in collided with a quonset hut which the Air Force was moving along a public road in a negligent fashion. The accident occurred on a road which led to the base, about seven miles from the base entrance. Knecht was returning from an overnight liberty. The court held that Knecht's heirs could recover under the FTCA. The opinion, however, does not reveal whether the accident occurred within the boundaries of

Government-owned property, but as we have already noted, Government ownership is not a decisive factor.

In this case, we find such a paucity of facts that it is impossible to fit the case into any of the patterns illustrated by the cases reviewed above in our search for a clue to solving the *Feres* puzzle. The tortfeasor may be assumed to be some employee of the NCO Club and, hence, a Government employee. We know that Troglia was in military service but do not know whether his travel along Vassar Lake Road was "activity incident to service" or some purely personal activity. The vast majority of the cases indicate that *Feres* created governmental non-liability only for those injuries which "arise out of or are in the course of activity incident to service". *Feres v. United States*, 340 U.S. at 146, 71 S.Ct. at 159.

We conclude that summary judgment in this case was inappropriate. Therefore, we reverse the judgment and remand to the District Court for such proceedings as may be necessary to determine the essential facts as to what Troglia's status was at the time of the injury and whether the activity in which he was engaged was incident to his military service. Only upon such facts can the applicability of the *Feres* doctrine be decided.

The judicial modification of the FTCA apparently made by the Supreme Court in *Feres* so as to except servicemen therefrom under circumstances denominated as "incident to service" calls for a more fully developed factual situation than that presented to us on this appeal.

In our quandry as to the applicability of *Feres* we are not alone. Ten years ago the Sixth Circuit was faced with a similar problem in *Hale v. United States*, 416 F.2d 355 (1969):

"We believe that the Supreme Court has never to date had before it a case which required it to make a clear-cut choice between the conflicting standards referred to above as set out in *Brooks* and *Feres* and *Brown*. This may be such a case. . . . And we find it impossible in the state of the record now before us

to determine under what we believe is the proper standard whether claimant's injuries '[arose] out of or in the course of military duty'. [citing *Feres v. United States*, 340 U.S. at 146, 71 S.Ct. at 360]." *Hale v. United States*, 416 F.2d at 359–360.

To us this seems to be the fairest method of determining the applicability, if any, of *Feres*.

REVERSED and REMANDED.