

1998 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-1-1998

# O'Neill v. United States

Precedential or Non-Precedential:

Docket 97-7030

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1998

Recommended Citation

"O'Neill v. United States" (1998). *1998 Decisions.* Paper 99.
http://digitalcommons.law.villanova.edu/thirdcircuit_1998/99

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1998 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed May 1, 1998

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 97-7030

BONNIE A. O'NEILL, on behalf of herself and the es tate of
Kerryn L. O'Neill; EDMUND J. O'NEILL,
        Appellants

v.

UNITED STATES OF AMERICA

(D.C. Civ. No. 96-cv-00800)

SUR PETITION FOR REHEARING

Present: BECKER, Chief Judge,
SLOVITER, STAPLETON, MANSMANN, GREENBERG,
SCIRICA, COWEN, NYGAARD, ALITO, ROTH, McKEE and
RENDELL, Circuit Judges, and POLLAK,*  District Judge

The petition for rehearing filed by appellants in the
above-entitled case having been submitted to the judges
who participated in the decision of this Court and to all the
other available circuit judges of the circuit in regular active
service, and no judge who concurred in the decision having
asked for rehearing, and a majority of the circuit judges of
the circuit in regular service not having voted for rehearing,
the petition for rehearing by the panel and the Court in

_____

*The Honorable Louis H. Pollak, United States District Judge for the
Eastern District of Pennsylvania, who sat by designation, as to panel
rehearing only.

banc, is denied. Chief Judge Becker would grant rehearing for the reasons set forth in the attached Statement.

BY THE COURT,

/s/ Anthony J. Scirica

Circuit Judge

Dated: May 1, 1998

2

STATEMENT SUR DENIAL OF THE
PETITION FOR REHEARING

BECKER, Chief Judge.

The panel has concluded that the O'Neill family's
wrongful death claim is barred by the doctrine announced
in Feres v. United States, 340 U.S. 135 (1950) and its
progeny. I do not believe that it is.

The government relies heavily on the opinion in United
States v. Shearer, 473 U.S. 52 (1985), where the Supreme
Court held that the family of a service member could not
recover under the Federal Tort Claims Act ("FTCA") for the
death of their son who was murdered by a fellow service
member. The facts of this case, however, are quite different
from those in Shearer. So far as we can tell from the
published opinions in Shearer, the men involved served
together; their relationship was formed on this basis; and
the court reasonably concluded that the injury occurred
"incident to service." In contrast, the relationship between
Kerryn O'Neill and her assailant was a purely personal
one.** Indeed, it is difficult for me to imagine anything less
incident to service than being attacked by an ex-lover while

_____

**O'Neill, a Naval officer, was murdered by her former fiance, Ensign
George Smith. O'Neill met Smith at the United States Naval Academy
where they both attended school. After graduation O'Neill was assigned
to a naval base in San Diego. Coincidentally, Smith was sent to the same
base several months later in preparation for a tour of duty on a
submarine. Shortly after Smith's arrival in San Diego, O'Neill broke off
their engagement and he began to stalk her. One night while O'Neill was
sitting in her on-base apartment watching a movie with a friend, Smith
came to her building, shot and killed her and her companion and then
killed himself.

Smith had been given a battery of psychological tests to determine his
psychological fitness for submarine duty. On this "Subscreen" test he
had scored four standard deviations above normal levels (in the 99.99
percentile) for aggressive/destructive behavior. He had also scored more
than two standard deviations above normal levels in six other categories
-- including impulsive and manipulative behavior. Under Naval
procedures, these results should have been forwarded to the Department
of Psychiatry at the Naval Hospital for a full psychological evaluation.
O'Neill's family, with considerable force, urges that the Navy was
negligent in failing to follow-up on these extreme test results.

3

sitting at home watching a movie with a friend. Surely, Smith would have killed O'Neill even if she was a civilian at the time.

The government urges that the primary rationale for the Feres doctrine -- the desire to prevent the judiciary from second-guessing sensitive military decisions -- is implicated in this case. However, the gravamen of the Feres doctrine is that the government is immune from suit when injuries occur incident to service. If a civilian friend of O'Neill's had been murdered by Smith, the same concerns regarding second-guessing military judgments would be implicated, but I do not believe that we would dismiss the lawsuit. Similarly, where a plaintiff has engaged in an activity of a civilian nature, the "incident to service" test is not satisfied and the Feres bar has not been applied. See e.g., Johnson v. United States, 704 F.2d 1431, 1439 (9th Cir. 1983).

In Brooks v. United States, 337 U.S. 49 (1949), the government made an argument similar to that raised here, that because military decisions would be questioned suit should be barred under the FTCA. The Supreme Court ruled that the rationale was irrelevant if the incident to service test was not satisfied:

> The Government envisages dire consequences should we reverse. . . [a] battle commander's poor judgment, an army surgeon's slip of hand, a defective jeep . .. all would ground tort actions against the United States. But we are dealing with an accident which had nothing to do with the [plaintiffs'] army careers, injuries not caused by their service except in the sense that all human events depend upon what has already transpired. Were the accident incident to the [plaintiffs'] service, a wholly different case would be presented.

Id. at 52. In Feres and Shearer, the court was presented with "wholly different cases," cases where the service members' injuries occurred incident to their service. However, here, where decedent's injuries were wholly unrelated to her military service, we should follow the Supreme Court's direction in Brooks and not be swayed by the military judgment rationale. Because I think that this

4

case has been wrongly decided, and because of the importance of the issue, I vote for rehearing en banc (see Third Circuit I.O.P. 9.3.1). I acknowledge that under my view there will occasionally be cases in which so-called second guessing occurs, but the Supreme Court's jurisprudence does not extirpate every incarnation of that phenomenon, see Brooks, supra.

In the decades following the decision in Feres, the case was subjected to considerable criticism from both the courts and the academy. In United States v. Johnson, 481 U.S. 681, 700 (1987), Justice Scalia was joined by three other justices in a dissent in which he remarked that "Feres was wrongly decided and heartily deserves the `widespread, almost universal criticism' it has received." (citing Agent Orange Product Liability Litigation, 580 F. Supp. 1242, 1246 (E.D.N.Y. 1984). In Peluso v. United States, 474 F.2d 605 (3d Cir. 1973) (per curiam), we expressed the view that Feres was wrongly decided and the hope that the Supreme Court would reverse it, observing that the "facts pleaded here, if true, cry out for a remedy." Id. at 606. And in Hinkie v. United States, 715 F.2d 96, 97 (3d Cir. 1983), we dismissed a lawsuit under the Feres bar, but only after noting that "[w]e are forced once again to decide a case where `we sense the injustice . . . of [the] result.' " Moreover, as I document in the margin, scholarly criticism of the doctrine is legion.***

In the last decade, however, these voices of courts and

---

***See, e.g., Jonathan P. Tomes,Feres to Chappell to Stanley: Three Strikes and Servicemembers Are Out, 25 U. Rich. L. Rev. 93 (1990); Barry Bennett, The Feres Doctrine, Discipline and the Weapons of War, 29 St. Louis U. L.J. 383 (1984); David E. Seidelson, The Feres Exception to the Federal Tort Claims Act: New Insight Into an Old Problem, 11 Hofstra L. Rev. 629 (1983); Thomas M. Gallagher, Note, Servicemembers' Rights Under the Feres Doctrine: Rethinking`Incident To Service' Analysis, 33 Vill. L. Rev. 175 (1988); David S. Schwartz, Note, Making Intramilitary Tort Law More Civil: A Proposed Reform of the Feres Doctrine, 95 Yale L. J. 992 (1986); William S. Meyers, Comment, The Feres Doctrine: Has It Created Remediless Wrongs For Relatives of Servicemen?, 44 U. Pitt. L. Rev. 929 (1983); Note, From Feres to Stencel: Should Military Personnel Have Access to FTCA Recovery?, 77 Mich. L. Rev. 1099 (1979);

commentators have died down. Everyone seems to have given up. But the harshness of the doctrine remains. Just look at the injustice suffered by the family of Kerryn O'Neill. Bolstered by the oft-quoted words of Justice Frankfurter:

> Wisdom too often never comes, and so one ought not to reject it merely because it comes late.

Henslee v. Union Planters Bank, 335 U.S. 595, 600 (1949), I urge the Supreme Court to grant certiorari and reconsider Feres. Judge Sloviter and Judge McKee join in this Statement.

A True Copy:
Teste:

> Clerk of the United States Court of Appeals
> for the Third Circuit

6