**SHAMMARA RICHARDS, Individually and as Personal Representative of the ESTATE of Charles A. Richards, Jr., and as Guardian and next of Kin of SHANEE A. RICHARDS and CHARLES RICHARDS, Appellant**

**v.**

**UNITED STATES OF AMERICA, Appellee**

No. 98/7235

United States Court of Appeals for the Third Circuit

May 5, 1999

MAURICE J. CUSICK, St. Croix, U.S.V.I., *Attorney for Appellant*

MICHAEL A. HUMPHREYS, St. Croix U.S.V.I., *Attorney for Appellee*

LEWIS, *Circuit Judge*

### OPINION

Appellant Shammara Richards is the wife and personal representative of the estate of Charles A. Richards, Jr. She appeals from the District Court's order dismissing her complaint for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1). In particular, Mrs. Richards asks that we allow her negligence claims against the United States under the Federal Tort Claims Act ("FTCA") to go forward so that she can attempt to recover for her husband's tragic death. Regrettably, the Supreme Court's decision in *Feres v. United States*, 340 U.S. 135, 95 L. Ed. 152, 71 S. Ct. 153

(1950), and the cases stemming from it prevent us from granting Mrs. Richards's request. Thus, we will affirm the District Court's judgment.

## I.

Charles Richards was a private in the United States Armed Forces, stationed in Fort Knox, Kentucky. On June 26, 1995, Private Richards left work early to go home and attend to his pregnant wife.[1] Although Private Richards received permission to leave early, the Army did not issue him a pass or furlough. While driving home in his personal vehicle, Private Richards was broadsided by a five-ton military fuel truck, killing him instantly. The accident took place within the confines of the Fort Knox Army Base, at the intersection of Kentucky Highway 1638 and U.S. Highway 31W. Kentucky Highway 1638 is a public highway that runs through an easement of land granted by the Army to the State of Kentucky, and is patrolled and maintained by the State.

Mrs. Richards filed suit under the FTCA, alleging that her husband died "as a direct and proximate result of a vehicular accident due to the negligence of the United States Army and its employees." Complaint at ¶ 3. Specifically, she alleged that the United States was responsible for her husband's death because it failed to properly maintain the Army vehicle which caused the collision and negligently supervised the solider who drove the vehicle. Complaint at ¶¶ 12-13, 15-17. The District Court dismissed the suit for lack of subject matter jurisdiction, concluding that Private Richards's death was incident to his military service and thus barred by the *Feres* doctrine. This appeal followed.

We exercise jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. We review de novo whether the *Feres* doctrine applies to

---

[1] The United States disputes the alleged purpose for Private Richards's early departure. It argues that Private Richards left his duty station early to go to the Fort Knox Education Center to execute forms that would have entitled him to receive tuition assistance from the Army. For purposes of ruling on the government's motion to dismiss, the District Court accepted, without deciding, that Private Richards was on his way home when he died. *See Richards v. United States* , 38 V.I. 381, 1 F. Supp. 2d 498, 500 (D.V.I. 1998). Similarly, we will accept appellant's contention that Private Richards was homeward bound at the time of the accident.

the facts in the record. *Estate of Martinelli v. United States*, 812 F.2d 872, 873 (3d Cir. 1987).

## II.

As a sovereign, the United States may not be sued without its consent. *See United States v. Mitchell*, 463 U.S. 206, 212, 77 L. Ed. 2d 580, 103 S. Ct. 2961 (1983). Sovereign immunity not only protects the United States from liability, it deprives a court of subject matter jurisdiction over claims against the United States. *See id.*

In 1946, Congress passed the Federal Tort Claims Act ("FTCA"), which waived the sovereign immunity of the United States for certain torts committed by federal employees. *See* 28 U.S.C. § 1346(b). Under the FTCA, civil actions are permitted against the United States for:

> injury or loss of property . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his[or her] office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b).

In *Feres*, the Supreme Court limited the applicability of the FTCA as it pertains to military personnel. There, the Court held that "the Government is not liable under the [FTCA] for injuries to [service members] where the injuries arise out of or are in the course of activity incident to service." 340 U.S. at 146. Although *Feres* offered several rationales for its holding,

> [in] the last analysis, *Feres* seems best explained by the peculiar and special relationship of the soldier to his superiors, the effects of the maintenance of such suits on discipline, and the extreme results that might obtain if suits under the Tort Claims Act were allowed for negligent orders given or negligent acts committed in the course of military duty.

495

*United States v. Shearer*, 473 U.S. 52, 57, 87 L. Ed. 2d 38, 105 S. Ct. 3039 (1985) (quoting *United State v. Muniz*, 374 U.S. 150, 162, 10 L. Ed. 2d 805, 83 S. Ct. 1850 (1963)) (internal quotations omitted).[2] The Supreme Court has not articulated a specific method for determining whether an injury is "incident" to military service. Rather, it has instructed courts to examine each case "in light of the statute as it has been construed in *Feres* and subsequent cases." *Shearer*, 473 U.S. at 57. To assist with this inquiry, courts consider a number of factors including: (1) the service member's duty status; (2) the site of the accident; and (3) the nature of the service member's activity at the time of injury. *See, e.g., Dreier v. United States*, 106 F.3d 844, 848 (9th Cir. 1997); Schoemer v. United States, 59 F.3d 26, 28 (5th Cir. 1995). A court must consider each of these factors in light of the totality of the circumstances; thus, the fact that any one factor weighs in favor of applying the *Feres* doctrine is not necessarily dispositive.

## A.

At first glance, our decision in *Thomason v. Sanchez*, 539 F.2d 955 (3d Cir. 1976), appears to settle the issue raised in this appeal. In *Thomason*, an active member of the United States Army was struck by an automobile owned and operated by another service member while operating his motorcycle on the grounds of the Army base. *See id.* at 956. The motorcyclist filed suit against the United States under the FTCA. We held that *Feres* barred the service member's suit because he sustained his injuries while on active duty and on the military base. *See id.* at 957. In so holding, we did not examine the service member's purpose for riding the motorcycle. As in *Thomason*, Private Richards's accident took place within the confines of the Army base and while he was on active duty. Thus, *Thomason* seemingly mandates our application of the *Feres* doctrine.

---

[2] The other *Feres* rationales are: (1) the "distinctively federal" nature of the relationship between the government and the armed forces; and (2) the ability of service members to receive no-fault statutory disability and death benefits through the Veterans' Administration. *See United States v. Johnson*, 481 U.S. 681, 689-90, 95 L. Ed. 2d 648, 107 S. Ct. 2063 (1987); *Stencel Aero Engineering Corp. v. United States*, 431 U.S. 666, 672-73, 52 L. Ed. 2d 665, 97 S. Ct. 2054 (1977).

Mrs. Richards contends that *Thomason* is distinguishable. Specifically, she argues that, unlike in *Thomason*, Private Richards's accident occurred while he was traveling on a public highway, maintained and patrolled by the State of Kentucky, with no military base in sight. In addition, she argues that *Thomason* incorrectly focused on the "status" of the service member, whereas subsequent Supreme Court decisions have instructed courts to examine whether the activity was "incident to military service." We have not previously considered the application of the *Feres* doctrine to these specific facts. Moreover, the two United States Courts of Appeals that have considered similar facts differ on whether *Feres* bars suit. *See Flowers v. United States*, 764 F.2d 759 (11th Cir. 1985); *Troglia v. United States*, 602 F.2d 1334 (9th Cir. 1979). Still, an examination of these decisions is instructive.

In *Flowers*, an active duty service member collided with a United States Air Force bus while "driving his civilian automobile home from a personal errand to the grocery store during his off-duty hours." 764 F.2d at 760. The accident occurred on a public highway maintained and policed by the State of Florida, but running across an easement of land granted by the Air Force. The court rejected the argument that the public accessibility of the road somehow distinguished it from the other roads running across military reservation property. *See id.* at 761. Instead, the court held that *Feres* applied because "Flowers' activity at the time of his accident, although personal, arose out of his life on the military reservation . . . ." *Id.*

In *Troglia*, an active member of the Air Force brought suit under the FTCA for personal injuries suffered in an automobile accident with another motorist who had been served intoxicating beverages at the Air Force Base Noncommissioned Officers Club. *See* 602 F.2d at 1335. The accident took place about one-half mile outside the gate guarding access to the Air Force base, but on property owned by the United States and adjacent to the confines of the Air Force Base. The local government maintained and patrolled the road due to an easement granted by the United States. *See id.* In reversing the District Court's grant of summary judgment based on *Feres*, the court stated that "the connection between mere Government ownership of land near a base and Troglia's military service is so

weak, that the accident's location should not be a controlling factor." *Id.* at 1339. The court noted, however, that "had the accident occurred inside the base itself, this might be a different case." *Id.*

We find that *Flowers* is more analogous to this case. As in *Flowers*, Private Richards was driving his civilian automobile home for a nonmilitary purpose at the time of the accident. Moreover, in both cases the accident occurred on military base premises, whereas in *Troglia*, the accident took place one-half mile outside the base. Indeed, the court in *Troglia* noted the importance of this distinction when it stated that had the accident occurred inside the base itself — rather than simply on government owned property — it might have decided the case differently.

■ Moreover, we believe that Private Richards's activity at the time of the accident supports the application of *Feres*. Private Richards died on the grounds of the Army base while driving home from his duty station. He was not simply driving on a public road as a member of the general public. *Cf. Brooks v. United States*, 337 U.S. 49, 93 L. Ed. 1200, 69 S. Ct. 918 (1949) (two service members on furlough injured in an off-base accident on a public highway could bring suit under the FTCA — service members were on personal business and the accident was totally unrelated to their military service). Rather, Private Richards's relationship with the military — i.e., the fact that he worked on the Army base and was leaving his duty station — is the reason he was traveling on Kentucky Highway 1628 at the time of the accident. *See, e.g., Stewart v. United States*, 90 F.3d 102, 104-05 (4th Cir. 1996) (service member injured in on-base accident while driving from his duty station to his home to shower and change clothes before reporting to his next duty assignment was "engaged in activity directly related to the performance of military obligations"). *Lauer v. United States*, 968 F.2d 1428, 1430 (1st Cir. 1992) (noting that departing for nonmilitary activity from duty station or returning therefrom generally are activities incident to military service). Had Private Richards been struck by a military vehicle while traveling home from a place unrelated to his military service, or on a public road outside the Army base, we may have reached a different conclusion. However, as the District Court stated, "the totality of the

circumstances shows that Richards . . . 'would not, except in the event of the rarest coincidence, have been in the same place at the same time with the same purpose, had it not been incident to his active status in the military.'" *Richards*, 1 F. Supp. 2d at 502 (quoting *Shaw v. United States*, 854 F.2d 360, 363 (10th Cir. 1988)). Thus, given the factual circumstances surrounding Private Richards's accident, we cannot escape the conclusion that his death was incident to his military service. Accordingly, we will affirm the District Court's judgment.

### B.

Although *Feres* and its progeny, most notably *Thomason*, mandate that we affirm the District Court's dismissal of Mrs. Richards's complaint, we believe this result illustrates the disconnect that has come to exist between the philosophy behind *Feres* and its application. As evidence, one need only consider the fit between the facts of this case and the rationales traditionally offered to justify *Feres*.

As stated previously, the Supreme Court has explained that the *Feres* doctrine

> seems best explained by the peculiar and special relationship of the soldier to his superiors, the effects of the maintenance of such suits on discipline, and the extreme results that might obtain if suits under the Tort Claims Act were allowed for negligent orders given or negligent acts committed in the course of military duty.

*United States v. Shearer*, 473 U.S. 52, 57, 87 L. Ed. 2d 38, 105 S. Ct. 3039 (1985) (quoting *United State v. Muniz*, 374 U.S. 150, 162, 10 L. Ed. 2d 805, 83 S. Ct. 1850 (1963)) (internal quotations omitted). Thus, when evaluating whether certain facts weigh in favor or against applying *Feres* to bar a service member's suit, a court should consider how these facts relate to the relationship between the soldier and his or her relevant superiors. More precisely, the court should consider whether or to what extent the accident in question relates to the service member's "military duty."

One can imagine a hypothetical scenario in which the conduct or decisions of a service member's superiors necessarily would come

499

under scrutiny during the course of a putative lawsuit. Imagine, for instance, a case in which a soldier attempted to sue the commander of his platoon for injuries received during battle. Such a suit clearly would involve injuries that "arose out of or in the course of activity incident to [military] service." *Feres*, 340 U.S. at 146. Therefore, this suit would implicate the "special relationship" between the soldier and his superior that is contemplated in *Shearer*, 473 U.S. at 57, and *Muniz*, 374 U.S. at 162. No court would have difficulty in finding that *Feres* barred such a suit because the fit between the facts of the case and the rationales justifying *Feres* would be close.

The factual circumstances that gave rise to Mrs. Richards's suit are quite different from the service-related injuries imagined in this hypothetical. This is so because Kentucky Highway 1638, the site of the accident that took Private Richards's life, is traveled by both civilians and military personnel. Thus, it was purely a matter of chance that Private Richards's automobile, rather than a civilian's vehicle, was struck by the military fuel truck, and that Private Richards, rather than a civilian, was killed. Therefore, unlike the hypothetical above involving a soldier engaged in combat, the accident that took Private Richards's life was not necessarily related to his military duty.

Nevertheless, unlike the position in which Mrs. Richards finds herself, the spouse of a civilian who was killed in the kind of accident that caused Private Richards's death could bring suit against the Army by virtue of the Federal Tort Claims Act. Moreover, if the spouse of this civilian brought such a suit, she would be able to raise questions about whether negligence by the Army caused or contributed to the accident. And, most important for our analysis, the questions raised by the civilian's spouse might implicate the decision making of military personnel; yet, they presumably would be no less or more intrusive than if these questions were posed by Mrs. Richards. Thus, while it is true that but for Private Richards active status in the military, he would not have been "in the same place at the same time with the same purpose" at the time of the accident, it is not at all clear that Mrs. Richards's suit implicates the "special relationship" between her deceased husband and his superiors in the manner contemplated in *Shearer* and *Muniz*.

500

Thus, we are left with a counter-intuitive and inequitable result simply because of Private Richards's military status. It is because *Feres* too often produces such curious results that members of this court repeatedly have expressed misgivings about it. *See O'Neill v. United States*, 140 F.3d 564, 565-66 (3d Cir. 1998) (Becker, C.J., statement sur denial of the petition for rehearing); *Loughney v. United States*, 839 F.2d 186, 187-88 (3d Cir. 1988); *Hinkie v. United States*, 715 F.2d 96, 97 (3d Cir. 1983); *Thomason*, 539 F.2d at 957; *Peluso v. United States*, 474 F.2d 605, 606 (3d Cir. 1973). Again, we express this concern and note that the result we reach does not actually advance the philosophy behind *Feres*.

III.

For the foregoing reasons, we will affirm the judgment of the District Court.