Matthew **TOBIN**, Plaintiff,

v.

**UNITED STATES of America, et al., Defendants.**

No. CIV.A. 00–4222.

United States District Court, D. New Jersey.

Oct. 18, 2001.

Richard M. Fricke, Fricke & Solomon, P.C., Newark, NJ, for Plaintiff Matthew Tobin.

Robert J. Cleary, United States Attorney, Louis J. Bizzarri, Assistant United States Attorney, Camden, NJ, for Defendant United States of America.

**OPINION ON DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

BROTMAN, District Judge.

Presently before the Court is Defendant's motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). For the reasons stated below, Defendant's motion shall be GRANTED.

**I. *FACTUAL AND PROCEDURAL BACKGROUND***

This case involves the application of the *Feres* doctrine to the Federal Tort Claims Act. Plaintiff, a member of the Armed Services, alleges negligence against the United States in connection with a motor vehicle accident.

Plaintiff is a cadet at the U.S. Military Academy at West Point, New York. (Pl.'s Br. in Opp'n to Def.'s Mot. Dismiss at 2.)

To further Plaintiff's education, the United States Army (the "Army") assigned Plaintiff to Mounted Maneuver Training at Fort Knox, Kentucky from July 6 to August 7, 1998. (Def.'s Mem. in Supp. of Mot. Dismiss Ex. 1 (Plaintiff's Military Orders).) Another cadet, Glenda Wrenn ("Cadet Wrenn"), was also assigned to training at Fort Knox. (Id.) In furtherance of the cadets' assignments, the Army issued each of them Military Orders that commanded them to attend the Fort Knox training. (Id.) These orders covered the cadets' travel to and from Fort Knox and authorized them to travel via privately owned vehicle. (Id.)

As the Fort Knox training neared completion, the cadets prepared for the drive back to West Point. To prepare the cadets for this trip, the Army conducted a safety briefing in which it instructed the cadets to drive carefully and travel in pairs to avoid fatigue (the "buddy system") (Def.'s Reply Mem. in Supp. of Mot. Dismiss Ex. 3 (Statement of Captain Ashe, U.S.A.).) At the briefing, the Army stressed the importance of the buddy system, and even instructed the cadets that if both drivers were tired they should pull over and get a hotel room, for which the Army would later reimburse them. (Id.) This safety briefing was given on Friday, August 7th, and the cadets were due back in West Point by Sunday, August 9th. (Id.)

In keeping with the buddy system, Plaintiff and Cadet Wrenn drove together in Cadet Wrenn's car. On August 8, 1998 at approximately 6:30 A.M., Cadet Wrenn allegedly fell asleep at the wheel and lost control of her car while en route to West Point. (Pl.'s Br. in Opp'n to Def.'s Mot. Dismiss at 2.) Both she and Plaintiff sustained serious injuries in the resulting crash. (Id.)

On July 20, 2000, Plaintiff brought suit against Cadet Wrenn in the New Jersey Superior Court, Law Division. Thereafter, Cadet Wrenn removed this case to federal court and filed an Answer to Plaintiff's Complaint. Subsequently, the United States Attorney successfully moved to substitute the United States of America as the sole Defendant pursuant to 28 U.S.C. §§ 2679(b), 1441, and 1442. Now, the United States Attorney moves for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1).

## II. *DISCUSSION*

Defendant advances two arguments in support of its motion to dismiss. First, it argues that this Court lacks subject matter jurisdiction since the *Feres* doctrine bars Plaintiff's claim. Second, it contends that this Court lacks subject matter jurisdiction because Plaintiff has failed to exhaust his administrative remedies, as required by 28 U.S.C. § 2675(a). Because the *Feres* doctrine bars Plaintiff's claim, the Court will grant Defendant's motion to dismiss.

### A. Standard for Motion to Dismiss under Rule 12(b)(1)

Upon a motion to dismiss under Rule 12(b)(1), a court must determine if it has the subject matter jurisdiction—i.e., the authority to consider the attacked claim. *See Coll. Savings Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 948 F.Supp. 400, 406 (D.N.J.1996). Because " 'federal courts are courts of limited jurisdiction,' " their power to adjudicate is limited to " 'only those cases within the bounds of Article III and the United States Constitution and Congressional enactments stemming therefrom.' " *Id.* (quoting *Walsh v. McGee*, 899 F.Supp. 1232, 1236 (S.D.N.Y.1995)). Indeed, the question of subject matter jurisdiction is of such great consequence that it is a " 'ques-

476

tion the court is bound to ask and answer for itself, even when not otherwise suggested.'" *Id.* at 406 (quoting *Mansfield, Coldwater & Lake Michigan Ry. v. Swan,* 111 U.S. 379, 382, 4 S.Ct. 510, 28 L.Ed. 462 (1884)). In resolving this question, "the person asserting jurisdiction bears the burden of showing that the case is properly before the court at all stages of the litigation." *Fed. Realty Inv. Trust v. Juniper Props. Group,* Civil Action No. 99–3389, 2000 WL 45996, at \*3 (E.D.Pa. Jan. 21, 2000) (citing *Packard v. Provident Nat'l Bank,* 994 F.2d 1039, 1045 (3d Cir.), *cert. denied,* 510 U.S. 964, 114 S.Ct. 440, 126 L.Ed.2d 373 (1993)).

In deciding a motion under Rule 12(b)(1), the court must first determine if it attacks the complaint on its face or on its facts. *Carpet Group Int'l v. Oriental Rug Imp. Ass'n,* 227 F.3d 62, 69 (3d Cir. 2000) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir. 1977)). If the motion disputes the complaint on its face, then the court must consider the complaint as true, and disposition of the motion becomes a purely legal determination. *Mortensen,* 549 F.2d at 891. On the other hand, if the motion concerns the existence of subject matter jurisdiction in fact, then "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.* As such, the court is not confined to the face of the pleadings when deciding whether subject matter exists on certain facts, and may thus consider affidavits and other relevant evidence outside of the pleadings. *Berardi v. Swanson Mem'l Lodge No. 48 of Fraternal Order of Police,* 920 F.2d 198, 200 (3d Cir.1990).

In this case, Defendant's Motion attacks the Plaintiff's Complaint on its facts, contending that the *Feres* doctrine precludes this Court's subject matter jurisdiction because Plaintiff's injury occurred during the course of Plaintiff's military service. Accordingly, this Court may consider evidence outside of the pleadings, including the Exhibits and Affidavits submitted with Defendant's Motion.

**B. The *Feres* Doctrine**

"It is elementary that '[t]he United States, as sovereign, is immune from suit save as it consents to be sued ..., and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980) (quoting *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941)). Accordingly, a claim against the United States is barred for lack of subject matter jurisdiction unless it falls within an applicable waiver of sovereign immunity. *Id.* "[A] waiver of sovereign immunity 'cannot be implied but must be unequivocally expressed'" by Congress. *Id.* (quoting *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969)).

The Federal Tort Claims Act ("FTCA") grants a limited, qualified waiver of the federal government's sovereign immunity. *See* 28 U.S.C. § 1346(b) (1994). It unequivocally:

> waives sovereign immunity as to claims against the United States for money damages for injury caused by the negligent or wrongful act or omission of a government employee acting within the scope of his employment "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

*Beneficial Consumer Discount Co. v. Poltonowicz*, 47 F.3d 91, 95–96 (3d Cir.1995) (quoting 28 U.S.C. § 1346(b)).

 In *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), the Supreme Court "limited the applicability of the FTCA as it pertains to military personnel," *Richards v. United States*, 176 F.3d 652, 654 (3d Cir.1999), by holding that "the Government is not liable under the [FTCA] for injuries to [service members] where the injuries arise out of or are in the course of activity incident to service." *Feres*, 340 U.S. at 146, 71 S.Ct. 153. Accordingly, the *Feres* doctrine pulls taut a chain of logic that deprives a court of subject matter jurisdiction: if the claim is barred by the *Feres* doctrine, then it does not fit within the FTCA's waiver, and is thus barred by sovereign immunity, which takes the matter outside of a federal court's subject matter jurisdiction.

The Supreme Court justified its position in *Feres* "by the peculiar and special relationship of the soldier to his superiors, the effects of the maintenance of such suits on discipline, and the extreme results that might obtain if suits … were allowed for negligent orders given or negligent acts committed in the course of military duty." *United States v. Shearer*, 473 U.S. 52, 57, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985). Other rationales supporting *Feres* are: "(1) the 'distinctive federal' nature of the relationship between the government and the armed forces; and (2) the ability of service members to receive no-fault statutory disability and death benefits through the Veterans' Administration." *Richards*, 176 F.3d at 655 n. 2 (citing *United States v. Johnson*, 481 U.S. 681, 689–90, 107 S.Ct. 2063, 95 L.Ed.2d 648 (1987)).[1]

 According to the Third Circuit, "the gravamen of the Feres doctrine is that the government is immune from suit when injuries occur *incident to service*." *O'Neill v. United States*, 140 F.3d 564, 565 (3d Cir.), *cert. denied*, 525 U.S. 962, 119 S.Ct. 404, 142 L.Ed.2d 328 (1998) (emphasis added). Several factors assist in determining whether an injury occurred incident to service, including: (1) the service member's duty status; (2) the site of the accident; and (3) the nature of the service member's activity at the time of injury. *Richards*, 176 F.3d at 655. A court must consider the totality of the circumstances when applying these factors, bearing in mind that "the fact that any one factor weighs in favor of applying the *Feres* doctrine is not necessarily dispositive." *Id.*

The *Richards* case provides a striking example of the breadth of the *Feres* doctrine. There, the wife of a slain serviceman sued under the FTCA after her husband was killed on his way home when his privately owned vehicle was struck by an Army truck operated by a member of the United States Army. *Id.* at 653–54. The district court dismissed the action for lack of subject matter jurisdiction, based on its application of the *Feres* doctrine. *Id.* at 654. The Third Circuit affirmed on appeal, holding that the serviceman's accidental death was incident to military service within the meaning of the *Feres* doctrine. *Id.* at 657–58.

The Third Circuit summarized the facts surrounding the serviceman's death as follows:

> Charles Richards was a private in the United States Armed Forces, stationed in Fort Knox, Kentucky. On June 26,

---

1. Though the *Feres* doctrine is the subject of robust criticism, it nonetheless remains good law. *See, e.g., Richards*, 176 F.3d at 657–58 (lamenting that because the *Feres* doctrine

"too often produces such curious results[,] members of the this court repeatedly have expressed misgivings about it," and listing cases).

1995, Private Richards left work early to go home and attend to his pregnant wife. Although Private Richards received permission to leave early, the Army did not issue him a pass or furlough. While driving home in his personal vehicle, Private Richards was broadsided by a five-ton military fuel truck, killing him instantly. The accident took place within the confines of the Fort Knox Army Base, at the intersection of Kentucky Highway 1638 and U.S. Highway 31W.

*Id.* at 653–54 (footnote omitted).

In holding that the Private Richards's activity at the time of the accident required the application of the *Feres,* the Third Circuit reasoned that: (1) the accident occurred on a military base; and (2) "Private Richards's relationship with the military-i.e., the fact that he worked on the Army base and was leaving his duty station-is the reason he was traveling ... at the time of the accident." *Id.* at 656. Indeed, the Third Circuit affirmed the district court's conclusion that Private Richards " 'would not, except in the event of the rarest coincidence, have been in the same place at the same time with the same purpose, had it not been incident to his active status in the military.' " *Id.* (quoting the district court, *Richards v. United States,* 1 F.Supp.2d 498, 502 (D.Vi.1998), which in turn was quoting *Shaw v. United States,* 854 F.2d 360, 363 (10th Cir.1988)) (internal quotation marks omitted).

## C. Application of the *Feres* Doctrine to this Case

The "incident to service" factors and policy justification for the *Feres* doctrine illustrate that Plaintiff's claim ought to be barred from this Court's subject matter

jurisdiction. The Court will consider these reasons in turn.

### A. Plaintiff's Duty Status

Defendant argues that Plaintiff was "on duty," and his accident thus "incident to service," because, "at the time of the accident[,] both cadets were not on leave status and were traveling pursuant to official military orders." Def.'s Mem. of Law in Supp. of Mot. Dismiss at 9–10. Plaintiff opposes this argument by pointing out that the cadets were not on active duty status at the time of the accident.[2] The court is persuaded by Defendant's argument.

While cadets cannot be considered "active duty," they are nevertheless service members and subject to the *Feres* doctrine's bar. *Galligan v. City of Phila.,* 156 F.Supp.2d 467, 473 (E.D.Pa.2001); *see Miller v. United States,* 42 F.3d 297 (5th Cir.1995); *Collins v. United States,* 642 F.2d 217 (7th Cir.1981); *Archer v. United States,* 217 F.2d 548 (9th Cir.1954). Accordingly, the distinction on which Plaintiff relies lacks force in determining the application of the *Feres* doctrine to the facts of this case.

Here, Plaintiff was acting under his obligation to the United States and was thus "on duty." He was neither on leave nor furlough and was in fact traveling under official military orders. Through these orders, the Army commanded Plaintiff not just to attend training, but to travel to and from that training. Def.'s Mem. of Law in Supp. of Mot. Dismiss Ex. 1 (Plaintiff's Military Orders). Though the Army could have commanded Plaintiff to travel via military vehicle, it authorized both him and Cadet Wrenn to travel by privately owned vehicle. Accordingly, because Plaintiff

---

**2.** Per federal law, military academy cadets do not begin serving on "active duty" until their graduation and appointment by the Army. *See* 10 U.S.C. § 4348 (1994).

was both traveling at the behest of, and only as authorized by the Army, this Court finds that Plaintiff's duty status lends support to the application of the *Feres* doctrine's bar.

### B. Site of the Accident and Nature of Plaintiff's Activity at the Time of Injury

The Court will consider the other two *Feres* factors together because of their interrelation on these facts. Defendant argues that Plaintiff's accident was incident to his service because it occurred along the direct route between West Point and Fort Knox while Plaintiff and Cadet Wrenn traveled between military duty stations. Plaintiff responds that: (1) because the accident took place off base, on a public highway, it should not be considered as incident to service; and (2) that the situation presented is merely that of one student "hitching a ride ... with a fellow student." The Court finds Defendant's argument compelling.

Though Plaintiff is correct in that the accident did not occur on a military installation, that fact is not determinative in this Court's consideration of the "incident to service" test. *See Richards*, 176 F.3d at 655–56 (applying *Feres* doctrine bar even though accident occurred on a public highway that ran through an easement of land granted to Kentucky by the Army); *Galligan*, at 473 (applying *Feres* doctrine bar even though accident occurred at Veteran's Stadium in Philadelphia). Instead, this Court must focus on how the Plaintiff's presence at the site of the accident relates to his military service.

In this regard, the only reason that Plaintiff and Cadet Wrenn were traveling on the highway that day was to commute from one military activity to another-i.e.; from their temporary training at Fort Knox to their permanent duty station at West Point. The site of the accident, the Pennsylvania Turnpike, is directly en route from Fort Knox, Kentucky, to West Point, New York. As already stated, *supra* Part II.B.1, neither Plaintiff nor Cadet Wrenn was on leave or furlough, and both were under military orders. Even the fact that they were driving together related to their military service, as they had been instructed to do so by their commanding officer. Thus, these facts fit within the ambit established in *Richards*, that Plaintiff "'would not, except in the event of the rarest coincidence, have been in the same place at the same time with the same purpose, had it not been incident to his active status in the military.'" *Richards*, 176 F.3d at 656 (quoting the district court, *Richards v. United States*, 1 F.Supp.2d 498, 502 (D.Vi.1998), which in turn was quoting *Shaw v. United States*, 854 F.2d 360, 363 (10th Cir.1988)) (internal quotation marks omitted).

Accordingly, this Court finds that the site and nature of Plaintiff's injury satisfies the "incident to service" test, thus requiring the application of the *Feres* doctrine's bar.

### C. Policy Considerations

Finally, recognizing the potential for inequitable results under the *Feres* doctrine, the *Richards* court has instructed lower courts to be mindful of the policy underlying the doctrine itself-i.e., protecting "the relationship between the soldier and his or her relevant superiors." *Id.* at 657. This Court finds that applying the *Feres* doctrine's bar to the facts of this case adheres to this stated policy goal. Specifically, this case implicates the decision making of military personnel, including the means of transport authorized, the amount of time allotted for travel, the adequacy of the safety briefing, etc. The *Feres* doctrine

exists to prevent exactly these types of challenges.

Because Plaintiff's claim is both incident to his service and offensive to the policy behind *Feres,* this Court must bar his claim for lack of subject matter jurisdiction.

## D. Failure to Exhaust Administrative Remedies

Since the *Feres* doctrine bars the assertion of subject matter jurisdiction in this case, the Court need not proceed to Defendant's argument concerning administrative remedies.

## III. *CONCLUSION*

For the reasons set forth above, this Court lacks subject matter jurisdiction over this matter by virtue of the *Feres* doctrine. Accordingly, Defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) is GRANTED. An appropriate Order will be entered.

## ORDER

**THIS MATTER** having come before the Court on Defendant's Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(1) for Lack of Subject Matter Jurisdiction; and,

The Court having reviewed the record and the submissions of the parties;

For the reasons set forth in the Court's Opinion accompanying this Order;

**IT IS** this 18th of October, 2001 **HEREBY ORDERED** that Defendant's Motion is **GRANTED** and that this action is **DISMISSED** pursuant to Federal Rule of Civil Procedure 12(h)(3).